**COONEY INDUSTRIAL TRUCKS, INC., Plaintiff,**

**v.**

**TOYOTA MOTOR SALES, U.S.A., INC., Defendant.**

**Civil Action No. 94–11767–REK.**

United States District Court,
D. Massachusetts.

Sept. 8, 1997.

Thomas S. Francis, William M. Clark, Law Offices of Thomas S. Francis, Boston, MA, for Plaintiff.

William N. Berkowitz, David Yamin, Daniel L. Goldberg, Bingham, Dana & Gould, Boston, MA, David D. Laufer, Toyota Motor Sales, U.S.A., Torrance, CA, for Defendant.

## Opinion

KEETON, District Judge.

After judgment for the defendant on a jury verdict in the form of answers to special questions under Rule 49(a) of the Federal Rules of Civil Procedure, plaintiff filed the following post-judgment motions:

(1) Plaintiff's Motion to Amend Judgment (Docket No. 124, filed July 16, 1997), with Memorandum in Support (Docket No. 125);

(2) Plaintiff's Motion for Judgment on Affirmative Defense and for New Trial (Docket No. 126, filed July 16, 1997), with Memorandum in Support (Docket No. 127).

Defendant has filed submissions in opposition to both motions (Docket Nos. 133, 134, 135, 136, and 137, filed July 30, 1997).

For the reasons summarized in this opinion, and in some instances stated more fully on the record at the time of rulings made during pretrial proceedings and trial, plaintiff's motions are denied.

### I.

Plaintiff's complaint in this case was complex, even as amended after case management conferences during which the court required clarification of ambiguities with respect to: (1) how many different claims plaintiff was asserting, (2) under precisely what statutory or decisional law, and (3) on what precise contentions with respect to the legally defined elements of each asserted claim (including both primary and alternative contentions). More complexity was added by defendant's assertion of an array of primary and alternative contentions for judgment as a matter of law on statutory and decisional substantive state-law grounds, state and federal procedural grounds, and, finally, for judgment based on key factual findings of the jury in their answers to special questions.

As background for understanding the legal issues presented by the motions now pending, this opinion begins with a recitation of undisputed facts, followed by findings of the jury and related rulings of the court, made while fashioning the verdict form (with the benefit of consultation with counsel), instructing the jury on the meaning of words and phrases appearing in the verdict form, and responding, after consultation with counsel, to questions the jury submitted to the court in writing during deliberations.

The disputes in this case developed from relationships between the parties and related entities, over a period of more than two decades, with respect to marketing of forklifts and other commercial vehicles. As stated in a part of the court's charge to the jury:

[After Reading Excerpts from
Part I of Verdict Form]

Plaintiff is making some claims in this case for breach of contract. . . . [Instructions on elements of a claim for breach of contract omitted here].

[After Reading Excerpts from
Part II of Verdict Form]

An applicable state law requires you to determine whether Toyota had "good cause" for taking the actions it did in connection with Cooney Industrial in 1994. Under that law, a manufacturer, such as Toyota, acts with "good cause" whenever it has genuine and legally permissible business reasons for its actions. To be "legally permissible," a party's business reasons must be not in conflict with that party's obligations and the other party's rights under contract law, as I have explained them to you in the Verdict form and my Charge to the Jury. In deciding whether the alleged reasons were genuine and legally permissible, you may consider all of the factors listed in the Verdict form as bearing upon the particular question you are answering.

In the court's Verdict form, you will be asked to consider various factors bearing upon your finding about "good cause." These factors will, depending upon the weight that you give them, have a bearing on whether Toyota had genuine and legally permissible business reasons and, therefore, "good cause" for taking certain actions.

In weighing these factors, you are free to give as little or as much weight to any factor as you choose. Each factor need not be weighed equally by you. The determination of how much weight to give any factor is to be made solely by you. For example, you may find that all factors but one weigh in favor of one party, but that, even standing alone, the remaining factor outweighs all of the others in your assessment of "good cause."

[After Reading Excerpts from Part III of Verdict Form]

You will notice that the purpose for which "good cause" must exist differs with the different framing of different questions.

To help you focus your thinking on the particular purpose you are to think about in relation to a particular question, the general subject matter of questions within a Part of the Verdict form is indicated in the title for that part. Thus, the title to Part III differs, you will notice, from the title to Part II. And the questions in Part III have a different focus from those in Part II.

Your findings on "good cause" in one part of the Verdict form thus may be different, or the same, as your findings on "good cause" in another part, all depending on your evaluation of the evidence and the factors in each instance, separately.

Because of the complexity of interlocking legal and factual issues, the court chose to submit the case to the jury in a special verdict form, fashioned with the cooperation and participation of counsel and with the objective of obtaining jury answers to all factual and evaluative issues that might be determined, in the trial court or on appeal, to be material to the outcome under any of the plausible alternatives argued by each party as to applicable law. Reproduced below is the entire verdict form, with jury answers shown for those questions they answered (others having been skipped, in accordance

with instructions in the verdict form, in view of their answers to earlier questions).

*Verdict*

### Part I.   Breach of Contract

*1(a).   Was Toyota's removal of New Hampshire from Cooney Industrial's area of primary responsibility ("APR") on February 1, 1994, a cause in fact of a measurable decline in Cooney Industrial's net income?*

YES   X   NO

*If you answer 1(a) YES, go to 1(b).   If you answer 1(a) NO, skip to 2.*

*1(b).   To what extent was Toyota's removal of New Hampshire from Cooney Industrial's APR a cause in fact of a measurable decline in Cooney Industrial's net income? (Check only one of the following).*

*(1)* _____ *Not substantial*

*(2)* _____ *Substantial*

*(3)* _____ *Very substantial*

*2.   Did Ken Cooney, on February 1, 1994, indicate to Jack Sprouls, by words or conduct, that Cooney consented to the removal of New Hampshire from Cooney Industrial's APR?*

YES   X   NO

*3.   Did Cooney Industrial, by December 31, 1993, equal or exceed, and thereafter maintain, Toyota National Retail Order Market Share in its APR?*

YES   X   NO

*4.   Was any agreement by Cooney Industrial to equal or exceed, and thereafter maintain, Toyota National Retail Order Market Share (National ROMS) in its APR a material feature of the 1992 Dealer Agreement?*

X   YES _____ NO

*5(a).   Did Toyota's conduct during the period of the 1992 Dealer Agreement have an effect on Cooney Industrial's ability to perform Cooney Industrial's obligations under the 1992 Dealer Agreement?*

X   YES _____ NO

*If you answer 5(a) YES, go to 5(b).   If you answer 5(a) NO, skip 5(b).*

*5(b).   To what extent did Toyota's conduct have an effect on Cooney Industrial's ability to perform?   (Check only one of the following).*

_____ *Toyota's conduct prevented Cooney Industrial from performing*

X   *Toyota's conduct made it materially more difficult for Cooney Industrial to perform*

_____ *Toyota's conduct had an effect to some extent but not enough to make it materially more difficult for Cooney Industrial to perform*

### Part II.   Good Cause for Allowing the 1992 Dealer Agreement to Come to an End on November 30, 1994

*A number of the questions submitted to you in Part II and later parts of the verdict form concern whether one party or another had "good cause" for identified conduct or actions.   The standard for good cause that applies in each of these questions may be different in some respect from the standard for good cause in another context.   The court will give you additional instructions about the standards.*

*The subquestions below in this Part II concern your evaluation of various ones among the "factors" that may have a bearing upon a "good cause" determination as "good cause" is defined for questions in Part II.*

*II.1. With respect to whether Toyota had good cause for allowing the 1992 Dealer Agreement to come to an end on November 30, 1994, for each of the factors identified below, what is your finding as to whether the evidence before you regarding this factor weighs more heavily in favor of one party than the other, and how strongly?   Answer as instructed as to each of the subquestions below.*

*(a) The amount of business transacted by Cooney Industrial during the period covered by the 1992 Dealer Agreement in comparison with the amount of business available to Cooney Industrial in the market conditions prevailing at that time.*

(1) Is this factor neutral in its weight as between the parties?

(Check in only one blank)

(i) _____ YES  (ii) __X__ NO

(iii) _____ We unanimously find no preponderance
of the evidence either way.

If your answer to 1(a)(1) is NO, go to 1(a)(2). If your answer to 1(a)(1) is YES or "We unanimously find no preponderance . . .", skip to 1(b).

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

(Check in only one blank)

(i) _____ Cooney Industrial

(ii) __X__ Toyota

(iii) _____ We unanimously find no preponderance
of the evidence either way.

(B) How strongly?

(Check in only one blank)

(i) _____ Slightly

(ii) _____ Moderately

(iii) __X__ Heavily

(iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(b) The amount of business transacted by Cooney Industrial under the dealer agreements in effect between August 15, 1991 and September 30, 1992 in comparison with the amount of business available to Cooney Industrial in the market conditions prevailing at that time.

(1) Is this factor neutral in its weight as between the parties?

(Check in only one blank)

(i) __X__ YES  (ii) _____ NO

(iii) _____ We unanimously find no preponderance
of the evidence either way.

If your answer to 1(b)(1) is NO, go to 1(b)(2). If your answer to 1(b)(1) is YES or "We unanimously find no preponderance . . .", skip to 1(c).

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

(Check in only one blank)

(i) _____ Cooney Industrial

(ii) _____ Toyota

(iii) _____ We unanimously find no preponderance
of the evidence either way.

(B) How strongly?

(Check in only one blank)

(i) _____ Slightly

(ii) _____ Moderately

(iii) _____ Heavily

(iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(c) The amount of business transacted by Cooney Industrial under the dealer agreements in effect before August 15, 1991 in comparison with the amount of business available to Cooney Industrial in the market conditions prevailing at that time.

(1) Is this factor neutral in its weight as between the parties?

(Check in only one blank)

(i) _____ YES  (ii) __X__ NO

(iii) _____ We unanimously find no preponderance
of the evidence either way.

If your answer to 1(c)(1) is NO, go to 1(c)(2). If your answer to 1(c)(1) is YES or "We unanimously find no preponderance . . .", skip to 1(d).

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

(Check in only one blank)

(i) _____ Cooney Industrial

(ii) __X__ Toyota

(iii) _____ We unanimously find no preponderance
of the evidence either way.

  (B) How strongly?

  (Check in only one blank)

    (i) __X__ Slightly

    (ii) _____ Moderately

    (iii) _____ Heavily

    (iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(d) Whether Cooney Industrial complied with time requirements for the establishment of a new facility under the 1990 Dealer Agreement.

  (1) Is this factor neutral in its weight as between the parties?

  (Check in only one blank)

    (i) _____ YES   (ii) __X__ NO

  (iii) _____ We unanimously find no preponderance
of the evidence either way.

If your answer to 1(d)(1) is NO, go to 1(d)(2). If your answer to 1(d)(1) is YES or "We unanimously find no preponderance ...", skip to 1(e).

  (2) In which party's favor does this factor weigh and how strongly?

  (A) In which party's favor?

  (Check in only one blank)

(i) _____ Cooney Industrial

(ii) __X__ Toyota

(iii) _____ We unanimously find no preponderance
of the evidence either way.

  (B) How strongly?

  (Check in only one blank)

    (i) __X__ Slightly

    (ii) _____ Moderately

    (iii) _____ Heavily

    (iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(e) The amount Cooney Industrial committed (including financial obligations incurred), during the period covered by the 1992 Dealer Agreement, to investment for the purpose of enabling Cooney Industrial to meet its obligations under the 1992 Dealer Agreement.

  (1) Is this factor neutral in its weight as between the parties?

  (Check in only one blank)

    (i) _____ YES   (ii) __X__ NO

  (iii) _____ We unanimously find no preponderance
of the evidence either way.

If your answer to 1(e)(1) is NO, go to 1(e)(2). If your answer to 1(e)(1) is YES or "We unanimously find no preponderance ...", skip to 1(f).

  (2) In which party's favor does this factor weigh and how strongly?

  (A) In which party's favor?

  (Check in only one blank)

(i) __X__ Coney Industrial

(ii) _____ Toyota

(iii) _____ We unanimously find no preponderance
of the evidence either way.

  (B) How strongly?

  (Check in only one blank)

    (i) __X__ Slightly

    (ii) _____ Moderately

    (iii) _____ Heavily

    (iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(f) The extent to which any of the investment commitment by Cooney Industrial was for permanent capital investment.

  (1) Is this factor neutral in its weight as between the parties?

  (Check in only one blank)

(i) _____ YES   (ii) __X__ NO

(iii) _____ We unanimously find no preponderance of the evidence either way.

If your answer to 1(f)(1) is NO, go to 1(f)(2). If your answer to 1(f)(1) is YES or "We unanimously find no preponderance ...", skip to 1(g).

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

(Check in only one blank)

(i) __X__ Cooney Industrial

(ii) _____ Toyota

(iii) _____ We unanimously find no preponderance of the evidence either way.

(B) How strongly?

(Check in only one blank)

(i) __X__ Slightly

(ii) _____ Moderately

(iii) _____ Heavily

(iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(g) The extent to which, during the period covered by the 1992 Dealer Agreement, Cooney Industrial's services to the public were or were not adequate to meet the needs of the public in the dealership area.

(1) Is this factor neutral in its weight as between the parties?

(Check in only one blank)

(i) _____ YES   (ii) __X__ NO

(iii) _____ We unanimously find no preponderance of the evidence either way.

If your answer to 1(g)(1) is NO, go to 1(g)(2). If your answer to 1(g)(1) is YES or "We unanimously find no preponderance ...", skip to 1(h).

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

(Check in only one blank)

(i) __X__ Cooney Industrial

(ii) _____ Toyota

(iii) _____ We unanimously find no preponderance of the evidence either way.

(B) How strongly?

(Check in only one blank)

(i) _____ Slightly

(ii) __X__ Moderately

(iii) _____ Heavily

(iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(h) The extent to which, during the period covered by the 1992 Dealer Agreement, Cooney Industrial had or failed to have facilities, equipment, vehicle parts, and qualified sales and service personnel sufficient to provide reasonably for the needs of the public.

(1) Is this factor neutral in its weight as between the parties?

(Check in only one blank)

(i) _____ YES   (ii) __X__ NO

(iii) _____ We unanimously find no preponderance of the evidence either way.

If your answer to 1(h)(1) is NO, go to 1(h)(2). If your answer to 1(h)(1) is YES or "We unanimously find no preponderance ...", skip to 1(i).

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

(Check in only one blank)

(i) __X__ Cooney Industrial

(ii) _____ Toyota

(iii) _____ We unanimously find no preponderance

*of the evidence either way.*

(B) How strongly?

(Check in only one blank)

    (i)   __X__ Slightly

    (ii)  _____ Moderately

    (iii)  _____ Heavily

    (iv)  _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii)

(i) The nature and extent of any breaches, defaults, or violations by Cooney Industrial of the terms and provisions of the 1992 Dealer Agreement.

    (1) Is this factor neutral in its weight as between the parties?

    (Check in only one blank)

    (i) _____ YES   (ii) __X__ NO

    (iii) _____ We unanimously find no preponderance of the evidence either way.

If your answer to 1(i)(1) is NO, go to 1(i)(2). If your answer to 1(i)(1) is YES or "We unanimously find no preponderance ...", skip to 1(j).

    (2) In which party's favor does this factor weigh and how strongly?

    (A) In which party's favor?

    (Check in only one blank)

(i) _____ Cooney Industrial   (ii) __X__ Toyota

(iii) _____ We unanimously find no preponderance of the evidence either way.

    (B) How strongly?

    (Check in only one blank)

    (i) _____ Slightly

    (ii) __X__ Moderately

    (iii) _____ Heavily

    (iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(j) The offer by Toyota to Cooney Industrial in September 1994 of a replacement dealer agreement to commence on October 1, 1994 and Cooney Industrial's non-acceptance of that offer.

    (1) Is this factor neutral in its weight as between the parties?

    (Check in only one blank)

    (i) _____ YES   (ii) __X__ NO

    (iii) _____ We unanimously find no preponderance of the evidence either way.

If your answer to 1(j)(1) is NO, go to 1(j)(2). If your answer to 1(j)(1) is YES or "We unanimously find no preponderance ...", skip to 1(k).

    (2) In which party's favor does this factor weigh and how strongly?

    (A) In which party's favor?

    (Check in only one blank)

(i) _____ Cooney Industrial

(ii) _____ Toyota

(iii) _____ We unanimously find no preponderance of the evidence either way.

    (B) How strongly?

    (Check in only one blank)

    (i) _____ Slightly

    (ii) _____ Moderately

    (iii) __X__ Heavily

    (iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(k) Whether, on the basis of the evidence before you, and reasoning from that evidence and not upon the basis of any matters not in evidence, you find that it would be injurious or beneficial to the public welfare that a dealership agreement exactly like that of the 1992 Dealer Agreement between Cooney Industrial and Toyota come to an end on November 30, 1994.

    (1) Is this factor neutral in its weight as between the parties?

    (Check in only one blank)

(i) _____ YES    (ii) _____ NO

(iii) __X__   We unanimously find no preponderance of the evidence either way.

If your answer to 1(k)(1) is NO, go to 1(k)(2). If your answer to 1(k)(1) is YES or "We unanimously find no preponderance ...", skip to II.2(a).

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

(Check in only one blank)

(i) _____   Cooney Industrial    (ii) _____ Toyota

(iii) _____   We unanimously find no preponderance of the evidence either way.

(B) How strongly?

(Check in only one blank)

(i) _____ Slightly

(ii) _____ Moderately

(iii) _____ Heavily

(iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

II.2(a). Taking into account only factors II.1(a) through II.1(j), and your findings with respect to those factors in Question II.1 immediately above, do you find that Toyota had good cause for allowing the 1992 Dealer Agreement to come to an end on November 30, 1994? (Check in only one blank.)

(i) __X__ YES    (ii) _____ NO

(iii) _____   We unanimously find no preponderance of the evidence either way

II.2(b). Taking into account all of the factors II.1(a) through II.1(k), and your findings with respect to those factors in Question II.1 immediately above, do you find that Toyota had good cause for allowing the 1992 Dealer Agreement to come to an end on November 30, 1994? (Check in only one blank.)

(i) __X__ YES    (ii) _____ NO

(iii) _____   We unanimously find no preponderance of the evidence either way

## Part III.  Good Cause with Respect to Change in Term from 2 Years to 4 Months Commencing on October 1, 1994

*The subquestions below in this Part III concern your evaluation of various ones among the "factors" that may have a bearing upon a "good cause" determination as "good cause" is defined for questions in Part III.*

III.1. With respect to whether Toyota had good cause for changing the 1992 Dealer Agreement terms from 2 years to 4 months in the 1994 Dealer Agreement commencing on October 1, 1994, for each of the factors identified below, what is your finding as to whether the evidence before you regarding this factor weighs more heavily in favor of one party than the other, and how strongly. Answer YES or NO as to each of the subquestions below.

(a) The amount of business transacted by Cooney Industrial during the period covered by the 1992 Dealer Agreement in comparison with the amount of business available to Cooney Industrial in the market conditions prevailing at that time.

(1) Is this factor neutral in its weight as between the parties?

(Check in only one blank)

(i) _____ YES    (ii) __X__ NO

(iii) _____   We unanimously find no preponderance of the evidence either way.

If your answer to 1(a)(1) is NO, go to 1(a)(2). If your answer to 1(a)(1) is YES or "We unanimously find no preponderance ...", skip to 1(b).

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

(Check in only one blank)

(i) __X__ Cooney Industrial

(ii) _____ Toyota

(iii) _____ We unanimously find no preponderance
of the evidence either way.

(B) How strongly?

(Check in only one blank)

(i) _____ Slightly

(ii) __X__ Moderately

(iii) _____ Heavily

(iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(b) The amount of business transacted by Cooney Industrial under the dealer agreements in effect between August 15, 1991 and September 30, 1992 in comparison with the amount of business available to Cooney Industrial in the market conditions prevailing at that time.

(1) Is this factor neutral in its weight as between the parties?

(Check in only one blank)

(i) __X__ YES   (ii) _____ NO

(iii) _____ We unanimously find no preponderance
of the evidence either way.

If your answer to 1(b)(1) is NO, go to 1(b)(2). If your answer to 1(b)(1) is YES or "We unanimously find no preponderance ...", skip to 1(c).

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

(Check in only one blank)

(i) _____ Cooney Industrial

(ii) _____ Toyota

(iii) _____ We unanimously find no preponderance
of the evidence either way.

(B) How strongly?

(Check in only one blank)

(i) _____ Slightly

(ii) _____ Moderately

(iii) _____ Heavily

(iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(c) The amount of business transacted by Cooney Industrial under the dealer agreements in effect before August 15, 1991 in comparison with the amount of business available to Cooney Industrial in the market conditions prevailing at that time.

(1) Is this factor neutral in its weight as between the parties?

(Check in only one blank)

(i) __X__ YES   (ii) _____ NO

(iii) _____ We unanimously find no preponderance
of the evidence either way.

If your answer to 1(c)(1) is NO, go to 1(c)(2). If your answer to skip to 1(d).

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

(Check in only one blank)

(i) _____ Cooney Industrial

(ii) _____ Toyota

(iii) _____ We unanimously find no preponderance
of the evidence either way.

(B) How strongly?

(Check in only one blank)

(i) _____ Slightly

(ii) _____ Moderately

(iii) _____ Heavily

(iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(d) Whether Cooney Industrial complied with time requirements for the establish-

ment of a new facility under the 1990 Dealer Agreement.

(1) Is this factor neutral in its weight as between the parties?

(Check in only one blank)

(i) __X__ YES    (ii) _____ NO

(iii) _____ We unanimously find no preponderance
of the evidence either way.

If your answer to 1(d)(1) is NO, go to 1(d)(2). If your answer to 1(d)(1) is YES or "We unanimously find no preponderance . . .", skip to 1(e).

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

(Check in only one blank)

(i) _____ Coney Industrial

(ii) _____ Toyota

(iv) _____ We unanimously find no pre-
ponderance
of the evidence either way.

(B) How strongly?

(Check in only one blank)

(i) _____ Slightly

(ii) _____ Moderately

(iii) _____ Heavily

(iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(e) The amount Cooney Industrial committed (including financial obligations incurred), during the period covered by the 1992 Dealer Agreement, to investment for the purpose of enabling Cooney Industrial to meet its obligations under the 1992 Dealer Agreement.

(1) Is this factor neutral in its weight as between the parties?

(Check in only one blank)

(i) __X__ YES    (ii) _____ NO

(iii) _____ We unanimously find no preponderance

of the evidence either way.

If your answer to 1(e)(1) is NO, go to 1(e)(2). If your answer to 1(e)(1) is YES or "We unanimously find no preponderance . . .", skip to 1(f).

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

(Check in only one blank)

(i) _____ Cooney Industrial

(ii) _____ Toyota

(iii) _____ We unanimously find no preponderance
of the evidence either way.

(B) How strongly?

(Check in only one blank)

(i) Slightly

(ii) _____ Moderately

(iii) _____ Heavily

(iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(f) The extent to which any of the investment commitment by Cooney Industrial was for permanent capital investment.

(1) Is this factor neutral in its weight as between the parties?

(Check in only one blank)

(i) __X__ YES    (ii) _____ NO

(iii) _____ We unanimously find no preponderance
of the evidence either way.

If your answer to 1(f)(1) is NO, go to 1(f)(2). If your answer to 1(f)(1) is YES or "We unanimously find no preponderance . . .", skip to 1(g).

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

(Check in only one blank)

(i) _____ Cooney Industrial

(ii) _____ Toyota

(iii) _____ We unanimously find no preponderance of
the evidence either way.

(B) How strongly?

(Check in only one blank)

(i) _____ Slightly

(ii) _____ Moderately

(iii) _____ Heavily

(iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(g) The extent to which, during the period covered by the 1992 Dealer Agreement, Cooney Industrial's services to the public were or were not adequate to meet the needs of the public in the dealership area.

(1) Is this factor neutral in its weight as between the parties?

(Check in only one blank)

(i) _____ YES  (ii) __X__ NO

(iii) _____ We unanimously find no preponderance of
the evidence either way.

If your answer to 1(g)(1) is NO, go to 1(g)(2). If your answer to 1(g)(1) is YES or "We unanimously find no preponderance ...", skip to 1(h).

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

(Check in only one blank)

(i) __X__ Cooney Industrial

(ii) _____ Toyota

(iii) _____ We unanimously find no preponderance
of the evidence either way.

(B) How strongly?

(Check in only one blank)

(i) _____ Slightly

(ii) __X__ Moderately

(iii) _____ Heavily

(iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(h) The extent to which, during the period covered by the 1992 Dealer Agreement, Cooney Industrial had or failed to have facilities, equipment, vehicle parts, and qualified sales and service personnel sufficient to provide reasonably for the needs of the public.

(1) Is this factor neutral in its weight as between the parties?

(Check in only one blank)

(i) _____ YES  (ii) __X__ NO

(iii) _____ We unanimously find no preponderance of
the evidence either way.

If your answer to 1(h)(1) is NO, go to 1(h)(2). If your answer to 1(h)(1) is YES or "We unanimously find no preponderance ...", skip to 1(i).

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

(Check in only one blank)

(i) __X__ Cooney Industrial

(ii) _____ Toyota

(iii) _____ We unanimously find no preponderance
of the evidence either way.

(B) How strongly?

(Check in only one blank)

(i) _____ Slightly

(ii) __X__ Moderately

(iii) _____ Heavily

(iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(i) The nature and extent of any breaches, defaults, or violations by Cooney Industrial of the terms and provisions of the 1992 Dealer Agreement.

(1) Is this factor neutral in its weight as between the parties?

(Check in only one blank)

(i) __X__ YES  (ii) _____ NO

(iii) _____ We unanimously find no preponderance
of the evidence either way.

If your answer to 1(i)(1) is NO, go to 1(i)(2). If your answer to 1(i)(1) is YES or "We unanimously find no preponderance ...", skip to 1(k).

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

(Check in only one blank)

(i) _____ Cooney Industrial

(ii) _____ Toyota

(iii) _____ We unanimously find no preponderance
of the evidence either way.

(B) How strongly?

(Check in only one blank)

(i) _____ Slightly

(i) _____ Moderately

(iii) _____ Heavily

(iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(j) [No factor (j) for Part III.]

(k) Whether, on the basis of the evidence before you, and reasoning from that evidence and not upon the basis of any matters not in evidence, you find that it would be injurious or beneficial to the public welfare that a dealership agreement exactly like that of the 1992 Dealer Agreement between Cooney Industrial and Toyota come to an end on November 30, 1994.

(1) Is this factor neutral in its weight as between the parties?

(Check in only one blank)

(i) _____ YES  (ii) _____ NO

(iii) __X__ We unanimously find no preponderance
of the evidence either way.

If your answer to 1(k)(1) is NO, go to 1(k)(2). If your answer to 1(k)(1) is YES or "We unanimously find no preponderance ...", skip to III.2(a).

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

(Check in only one blank)

(i) _____ Cooney Industrial

(ii) _____ Toyota

(iii) _____ We unanimously find no preponderance
of the evidence either way.

(B) How strongly?

(Check in only one blank)

(i) _____ Slightly

(ii) _____ Moderately

(iii) _____ Heavily

(iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

III.2(a). Taking into account only factors III.1(a) through III.1(i), and your findings with respect to those factors in Question III.1 immediately above, do you find that Toyota had good cause for changing the 1992 Dealer Agreement terms from 2 years to 4 months in the 1994 Dealer Agreement commencing on October 1, 1994?  (Check in only one blank.)

(i) _____ YES  (ii) __X__ NO

(iii) _____ We unanimously find no preponderance
of the evidence either way

III.2(b). Taking into account all of the factors III.1(a) through III.1(i) and III.(k), and your findings with respect to those factors in Question III.1 immediately above, do you find that Toyota had good cause for changing the 1992 Dealer Agreement terms from 2 years to 4 months in the 1994 Dealer Agreement commencing on October 1, 1994? (Check in only one blank.)

(i) _____ YES  (ii) __X__ NO

(iii) _____ *We unanimously find no preponderance of the evidence either way*

**Part IV. Good Cause with Respect to Not Including the Provision for a 6–Year Term if Cooney Industrial Meets the Market Share Requirement**

*The subquestions below in this Part IV concern your evaluation of various ones among the "factors" that may have a bearing upon a "good cause" determination as "good cause" is defined for questions in Part IV.*

IV.1. With respect to whether Toyota had good cause for not including the provision for a 6–year term if Cooney Industrial met the market share requirement, what is your finding as to whether the evidence before you regarding this factor weighs more heavily in favor of one party than the other, and how strongly. Answer YES or NO as to each of the subquestions below.

(a) The amount of business transacted by Cooney Industrial during the period covered by the 1992 Dealer Agreement in comparison with the amount of business available to Cooney Industrial in the market conditions prevailing at that time.

(1) Is this factor neutral in its weight as between the parties?

*(Check in only one blank)*

(i) _____ YES  (ii) __X__ NO

(iii) _____ *We unanimously find no preponderance of the evidence either way.*

*If your answer to 1(a)(1) is NO, go to 1(a)(2). If your answer to I(a)(1) is YES or "We unanimously find no preponderance . . .", skip to 1(b).*

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

*(Check in only one blank)*

(i) __X__ Cooney Industrial

(ii) _____ Toyota

(iii) _____ *We unanimously find no preponderance of the evidence either way.*

(B) How strongly?

*(Check in only one blank)*

(i) __X__ Slightly

(ii) _____ Moderately

(iii) _____ Heavily

(iv) _____ *We unanimously find no preponderance of the evidence for any of answers (i)-(iii).*

(b) The amount of business transacted by Cooney Industrial under the dealer agreements in effect between August 15, 1991 and September 30, 1992 in comparison with the amount of business available to Cooney Industrial in the market conditions prevailing at that time.

(1) Is this factor neutral in its weight as between the parties?

*(Check in only one blank)*

(i) __X__ YES  (ii) _____ NO

(iii) _____ *We unanimously find no preponderance of the evidence either way.*

*If your answer to 1(b)(1) is NO, go to 1(b)(2). If your answer to 1(b)(1) is YES or "We unanimously find no preponderance . . .", skip to 1(c).*

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

*(Check in only one blank)*

(i) _____ Cooney Industrial

(ii) _____ Toyota

(iii) _____ *We unanimously find no preponderance of the evidence either way.*

(B) How strongly?

*(Check in only one blank)*

(i) _____ Slightly

(ii) _____ Moderately

(iii) _____ Heavily

(iv) _____ *We unanimously find no preponderance of the evidence for any of answers (i)-(iii).*

(c) *The amount of business transacted by Cooney Industrial under the dealer agreements in effect before August 15, 1991 in comparison with the amount of business available to Cooney Industrial in the market conditions prevailing at that time.*

(1) *Is this factor neutral in its weight as between the parties?*

*(Check in only one blank)*

(i) ___X___ *YES*    (ii) _____ *NO*

(iii) _____ *We unanimously find no preponderance of the evidence either way.*

*If your answer to 1(c)(1) is NO, go to 1(c)(2). If your answer to 1(c)(1) is YES or "We unanimously find no preponderance ...", skip to 1(d).*

(2) *In which party's favor does this factor weigh and how strongly?*

(A) *In which party's favor?*

*(Check in only one blank)*

(i) _____ *Cooney Industrial*

(ii) _____ *Toyota*

(iii) _____ *We unanimously find no preponderance of the evidence either way.*

(B) *How strongly?*

*(Check in only one blank)*

(i) _____ *Slightly*

(ii) _____ *Moderately*

(iii) _____ *Heavily*

(iv) _____ *We unanimously find no preponderance of the evidence for any of answers (i)-(iii).*

(d) *Whether Cooney Industrial complied with time requirements for the establishment of a new facility under the 1990 Dealer Agreement.*

(1) *Is this factor neutral in its weight as between the parties?*

*(Check in only one blank)*

(i) ___X___ *YES*    (ii) _____ *NO*

(iii) _____ *We unanimously find no preponderance of the evidence either way.*

*If your answer to 1(d)(1) is NO, go to 1(d)(2). If your answer to 1(d)(1) is YES or "We unanimously find no preponderance ...", skip to 1(e).*

(2) *In which party's favor does this factor weigh and how strongly?*

(A) *In which party's favor?*

*(Check in only one blank)*

(i) _____ *Cooney Industrial*

(ii) _____ *Toyota*

(iii) _____ *We unanimously find no preponderance of the evidence either way.*

(B) *How strongly?*

*(Check in only one blank)*

(i) _____ *Slightly*

(ii) _____ *Moderately*

(iii) _____ *Heavily*

(iv) _____ *We unanimously find no preponderance of the evidence for any of answers (i)-(iii).*

(e) *The amount Cooney Industrial committed (including financial obligations incurred), during the period covered by the 1992 Dealer Agreement, to investment for the purpose of enabling Cooney industrial to meet its obligations under the 1992 Dealer Agreement.*

(1) *Is this factor neutral in its weight as between the parties?*

*(Check in only one blank)*

(i) ___X___ *YES*    (ii) _____ *NO*

(iii) _____ *We unanimously find no preponderance of the evidence either way.*

*If your answer to 1(e)(1) is NO, go to 1(e)(2). If your answer to 1(e)(1) is YES or "We*

unanimously find no preponderance ...", skip to 1(f).

    (2) In which party's favor does this factor weigh and how strongly?

      (A) In which party's favor?

      (Check in only one blank)

(i) _____ Cooney Industrial

(ii) _____ Toyota

(iii) _____ We unanimously find no preponderance
    of the evidence either way.

      (B) How strongly?

      (Check in only one blank)

    (i) _____ Slightly

    (ii) _____ Moderately

    (iii) _____ Heavily

    (iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(f) The extent to which any of the investment commitment by Cooney Industrial was for permanent capital investment.

    (1) Is this factor neutral in its weight as between the parties?

    (Check in only one blank)

    (i) _____ YES    (ii) __X__ NO

(iii) _____ We unanimously find no preponderance
    of the evidence either way.

If your answer to 1(f)(1) is NO, go to 1(f)(2). If your answer to 1(f)(1) is YES or "We unanimously find no preponderance ...", skip to 1(g).

    (2) In which party's favor does this factor weigh and how strongly?

      (A) In which party's favor?

      (Check in only one blank)

(i) __X__ Cooney Industrial

(ii) _____ Toyota

(iii) _____ We unanimously find no preponderance
    of the evidence either way.

      (B) How strongly?

      (Check in only one blank)

    (i) _____ Slightly

    (ii) __X__ Moderately

    (iii) _____ Heavily

    (iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(g) The extent to which, during the period covered by the 1992 Dealer Agreement, Cooney Industrial's services to the public were or were not adequate to meet the needs of the public in the dealership area.

    (1) Is this factor neutral in its weight as between the parties?

    (Check in only one blank)

    (i) _____ YES    (ii) __X__ NO

(iii) _____ We unanimously find no preponderance
    of the evidence either way.

If your answer to 1(g)(1) is NO, go to 1(g)(2). If your answer to 1(g)(1) is YES or "We unanimously find no preponderance ...", skip to 1(h).

    (2) In which party's favor does this factor weigh and how strongly?

      (A) In which party's favor?

      (Check in only one blank)

(i) __X__ Coney Industrial

(ii) _____ Toyota

(iv) _____ We unanimously find no preponderance
    of the evidence either way.

      (B) How strongly?

      (Check in only one blank)

    (i) _____ Slightly

    (ii) __X__ Moderately

    (iii) _____ Heavily

    (iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(h) The extent to which, during the period covered by the 1992 Dealer Agreement,

Cooney Industrial had or failed to have facilities, equipment, vehicle parts, and qualified sales and service personnel sufficient to provide reasonably for the needs of the public.

(1) Is this factor neutral in its weight as between the parties?

(Check in only one blank)

(i) \_\_\_\_\_ YES     (ii) \_\_X\_\_ NO

(iii) \_\_\_\_\_ We unanimously find no preponderance
of the evidence either way.

If your answer to 1(h)(1) is NO, go to 1(h)(2). If your answer to 1(h)(1) is YES or "We unanimously find no preponderance . . .", skip to 1(i).

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

(Check in only one blank)

(i) \_\_X\_\_ Cooney Industrial

(ii) \_\_\_\_\_ Toyota

(iii) \_\_\_\_\_ We unanimously find no preponderance
of the evidence either way.

(B) How strongly?

(Check in only one blank)

(i). \_\_\_\_\_ Slightly

(ii) \_\_X\_\_ Moderately

(iii) \_\_\_\_\_ Heavily

(iv) \_\_\_\_\_ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(i) The nature and extent of any breaches, defaults, or violations by Cooney Industrial of the terms and provisions of the 1992 Dealer Agreement.

(1) Is this factor neutral in its weight as between the parties?

(Check in only one blank)

(i) \_\_\_\_\_ YES     (ii) \_\_X\_\_ NO

(iii) \_\_\_\_\_ We unanimously find no preponderance

of the evidence either way.

If your answer to 1(i)(1) is NO, go to 1(i)(2). If your answer to 1(i)(1) is YES or "We unanimously find no preponderance . . .", skip to 1(k).

(2) In which party's favor does this factor weigh and how strongly?

(A) In which party's favor?

(Check in only one blank)

(i) \_\_X\_\_ Cooney Industrial

(ii) \_\_\_\_\_ Toyota

(iv) \_\_\_\_\_ We unanimously find no preponderance
of the evidence either way.

(B) How strongly?

(Check in only one blank)

(i) \_\_\_\_\_ Slightly

(ii) \_\_X\_\_ Moderately

(iii) \_\_\_\_\_ Heavily

(iv) \_\_\_\_\_ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

(j) [No factor (j) for Part IV.]

(k) Whether, on the basis of the evidence before you, and reasoning from that evidence and not upon the basis of any matters not in evidence, you find that it would be injurious or beneficial to the public welfare that a dealership agreement exactly like that of the 1992 Dealer Agreement between Cooney Industrial and Toyota come to an end on November 30, 1994.

(1) Is this factor neutral in its weight as between the parties?

(Check in only one blank)

(i) \_\_\_\_\_ YES     (ii) \_\_X\_\_ NO

(iii) \_\_\_\_\_ We unanimously find no preponderance
of the evidence either way.

If your answer to 1(k)(1) is NO, go to 1(k)(2). If your answer to 1(k)(1) is YES or "We unanimously find no preponderance . . .", skip to IV.2(a).

(2) In which party's favor does this factor weigh and how strongly?

   (A) In which party's favor?

   (Check in only one blank)

(i) _____ Cooney Industrial

(ii) _____ Toyota

(iii) _____ We unanimously find no preponderance
of the evidence either way.

   (B) How strongly?

   (Check in only one blank)

   (i) _____ Slightly

   (ii) __X__ Moderately

   (iii) _____ Heavily

   (iv) _____ We unanimously find no preponderance of the evidence for any of answers (i)-(iii).

IV.2(a). Taking into account only factors IV.1(a) through IV.1(i), and your findings with respect to those factors in Question IV.1 immediately above, do you find that Toyota had good cause for not including in the 1994 Dealer Agreement the provision for a 6–year term if Cooney Industrial met the market share requirement? (Check in only one blank.)

   (i) _____ YES   (ii) __X__ NO

   (iii) _____ We unanimously find no preponderance
of the evidence either way.

IV.2(b). Taking into account all of the factors IV.1(a) through IV.1(i) and IV.(k), and your findings with respect to those factors in Question IV.1 immediately above, do you find that Toyota had good cause for not including the 1994 Dealer Agreement the provision for a 6–year term if Cooney Industrial met the market share requirement? (Check in only one blank.)

   (i) _____ YES   (ii) __X__ NO

   (iii) _____ We unanimously find no preponderance
of the evidence either way.

## Part V.  Notice and Terms Different

1. Was Toyota's letter of August 15, 1994 a written notice with a detailed statement of Toyota's reasons for changing the length of the term of the 1994 Dealer Agreement from 2 years (as it was in the 1992 Dealer Agreement) to 4 months (as Toyota proposed for the 1994 Dealer Agreement)?

   __X__ YES _____ NO

2(a). Did Toyota, in the letter of August 15, 1994, give notice of its intent to allow the Dealer Agreement between Toyota and Cooney Industrial to come to an end unless Cooney Industrial accepted Toyota's offer of a 1994 Dealer Agreement on different terms?

   _____ YES __X__ NO

2(b)(1). Did Toyota offer in the 1994 Dealer Agreement only terms different from those contained in the 1992 Dealer Agreement?

   _____ YES __X__ NO

2(b)(2). Did Toyota, in addition to any oral notice, give written notice, in the letter of August 15, 1994, stating Toyota's reasons for offering terms different from those contained in the 1992 Dealer Agreement.

   __X__ YES _____ NO

## Part VI.  Causation and Damages

If you answer 1.1(a) YES, go to VI.1. Otherwise skip VI.1.

   VI.1. What amount, if any, do you find to be necessary to compensate Cooney Industrial fairly and reasonably

for any Cooney Industrial decline in net income that you find Cooney Industrial sustained as a direct result of Toyota's removal of New Hampshire from Cooney Industrial's APR on February 1, 1994? Answer in DOLLARS or NONE.

   $_____

If you answer NO to II.2(a) or II.2(b), answer VI.2(a). Otherwise, skip VI.2.

   VI.2(a). What amount, if any, do you find to be necessary to compensate Cooney Industrial fairly and reasonably

for any Cooney Industrial loss that you find Cooney Industrial

sustained as a direct result

of Toyota's allowing the 1992 Dealer Agreement to come to an end on November 30, 1994? Answer in DOLLARS or NONE.

$_____

Answer VI.2(b) if you answer VI.2(a) in DOLLARS and also answer VI.1 in DOLLARS. Otherwise, skip VI.2(b).

(The reason for including VI.2(b) in the verdict form is that your answer to it may be needed to help the court determine the amount of the judgment without awarding damages twice (or more) for one loss that had two (or more) legally responsible causes.)

VI.2(b). What part, if any, of the DOLLAR amount you find in answering VI.2(a) is duplicative of the award you have made in answering VI.1? Answer in DOLLARS or NONE.

$_____

If you answer NO to III.2(a) or III.2(b), answer VI.3(a). Otherwise, skip VI.3.

VI.3(a). What amount, if any, do you find to be necessary to compensate Cooney Industrial fairly and reasonably

for any Cooney Industrial loss that you find Cooney Industrial

sustained as a direct result

of Toyota's changing the 1992 Dealer Agreement terms from 2 years to 4 months in the 1994 Dealer Agreement commencing on October 1, 1994? Answer in DOLLARS or NONE.

$___None___

If you answer VI.3(a) in DOLLARS and also answer in DOLLARS in one or both of VI. 1 and VI.2(a), answer VI.3(b). Otherwise, skip VI. 3(b).

VI.3(b). What part, if any, of the DOLLAR amount you find in answering VI.3(a) is duplicative?

If your answer is NONE, check here._____

Otherwise, answer DOLLARS or NONE on each blank below.

(1) What part, if any, of the DOLLAR amount you find in answering VI.3(a) is duplicative of the award you have made in answering VI.1? Answer in DOLLARS or NONE.

$_____

(2) What part, if any, of the DOLLAR amount you find in answering VI.3(a) is duplicative of the award you have made in answering VI.2(a)? Answer in DOLLARS or NONE.

$_____

If you answer NO to IV.2(a) or IV.2(b), answer VI.4(a). Otherwise, skip VI.4.

VI.4(a). What amount, if any, do you find to be necessary to compensate Cooney Industrial fairly and reasonably

for any Cooney Industrial loss that you find Cooney Industrial sustained as a direct result

of Toyota's not including in the 1994 Dealer Agreement the provision for a 6-year term if Cooney Industrial met the market share requirement? Answer in DOLLARS or NONE.

$___None___

If you answer VI.4(a) in DOLLARS and also answer in DOLLARS one or more of VI.1, and VI.2(a), and VI.3(a), answer VI.4(b). Otherwise, skip VI.4(b).

VI.4(b). What part, if any, of the DOLLAR amount you find in answering VI.4(a) is duplicative?

If your answer is NONE, check here._____

Otherwise, answer DOLLARS or NONE on each blank below.

(1) What part, if any, of the DOLLAR amount you find in answering VI.4(a) is duplicative of the award you have made in answering VI.1? Answer in DOLLARS or NONE.

$_____

(2) What part, if any, of the DOLLAR amount you find in answering VI.4(a) is duplicative of the award you have

made in answering VI.2(a)? Answer in DOLLARS or NONE.

$_____

(3) What part, if any, of the DOLLAR amount you find in answering VI.4(a) is duplicative of the award you have made in answering VI.3(a)? Answer in DOLLARS or NONE.

$_____

If you answer V.1 NO, answer VI.5(a). Otherwise skip VI.5.

VI.5(a). What amount, if any, do you find to be necessary to compensate Cooney Industrial fairly and reasonably

for any Cooney Industrial loss that you find Cooney Industrial

sustained as a direct result

of Toyota's failure to give notice of changing the length of the term of the 1994 Dealer Agreement from 2 years to 4 months? Answer in DOLLARS or NONE.

$_____

Answer VI.5(b) if you answer VI.5(a) in DOLLARS and also answer in DOLLARS one or more of VI.1, and VI.2(a), and VI.3(a), and VI.4(a). Otherwise skip VI.5(b).

VI.5(b). What part, if any, of the DOLLAR amount you find in answering VI.5(a) is duplicative?

If your answer is NONE, check here._____ Otherwise, answer DOLLARS or NONE on each blank below.

(1) What part, if any, of the DOLLAR amount you find in answering VI.5(a) is duplicative of the award you have made in answering VI.1? Answer in DOLLARS or NONE.

$_____

(2) What part, if any, of the DOLLAR amount you find in answering VI.5(a) is duplicative of the award you have made in answering VI.2(a)? Answer in DOLLARS or NONE.

$_____

(3) What part, if any, of the DOLLAR amount you find in answering VI.5(a) is duplicative of the award you have

made in answering VI.3(a)? Answer in DOLLARS or NONE.

$_____

(4) What part, if any, of the DOLLAR amount you find in answering VI.5(a) is duplicative of the award you have made in answering VI.4(a)? Answer in DOLLARS or NONE.

$_____

If you answer V.2(a) NO, or V.2(b)(1) YES, or V.2(b)(2) NO, go to VI.6(a). Otherwise skip VI.6.

VI.6(a). What amount, if any, do you find to be necessary to compensate Cooney Industrial fairly and reasonably

for any Cooney Industrial decline in net income that you find Cooney Industrial

sustained as a direct result

of Toyota's failure to give notice, in the letter of August 15, 1994, of its intent to allow the Dealer Agreement between Toyota and Cooney Industrial to come to an end unless Cooney Industrial accepted Toyota's offer of a 1994 Dealer Agreement on different terms? Answer in DOLLARS or NONE.

$    None

Answer VI.6(b) if you answer VI.6(a) in DOLLARS and also answer in DOLLARS one or more of VI.1, and VI.2(a), and VI.3(a), and VI.4(a), and VI.5(a). Otherwise, skip VI.6(b).

VI.6(b). What part, if any, of the DOLLAR amount you find in answering VI.6(a) is duplicative?

If your answer is NONE, check here._____

Otherwise, answer DOLLARS or NONE on each blank below.

(1) What part, if any, of the DOLLAR amount you find in answering VI.6(a) is duplicative of the award you have made in answering VI.1? Answer in DOLLARS or NONE.

$_____

(2) What part, if any, of the DOLLAR amount you find in answering VI. 6(a) is duplicative of the award you

*have made in answering VI.2(a)? Answer in DOLLARS or NONE.*

$_____

*(3) What part, if any, of the DOLLAR amount you find in answering VI.6(a) is duplicative of the award you have made in answering VI.3(a)? Answer in DOLLARS or NONE.*

$_____

*(4) What part, if any, of the DOLLAR amount you find in answering VI.6(a) is duplicative of the award you have made in answering VI.4(a)? Answer in DOLLARS or NONE.*

$_____

*(5) What part, if any, of the DOLLAR amount you find in answering VI.6(a) is duplicative of the award you have made in answering VI.5(a)? Answer in DOLLARS or NONE.*

$_____

_____July 2 1997_____          _____/
s/_____

Date                    Foreperson

During deliberations, the jury sent several written questions to the court to which the court responded in writing after consultation with counsel. The following additional instructions were included in the court's written responses on the dates indicated.

### Question:

June 30, 1997

It would be helpful if you could provide us with the legal definition of "material" as used in Question 4. Please excuse us if "material" was included in your charge and we have overlooked it.

Thank you.

/s/

### Answer:

June 30, 1997

MEMBERS OF THE JURY:

The following explanation is the response to your question about the meaning of "material" in Question 1.4.

A "material" fact, circumstance, or contractual provision is one of sufficient importance in the relationship between the parties that it would lead a reasonable person to change his or her mind about whether to enter into a contract or make some other significant decision about the relationship or a potential relationship between the parties. Thus, to serve as a basis for a claim in court, an alleged fact, circumstance, or contractual provision must be material in the sense that it relates to a matter of importance to the parties.

### Question:

July 2, 1997

In Part V on page 40, we have questions for you on the "spirit of intent" of Question 2(a).

2(a) The word "unless" is troublesome. If "unless" is really important we must answer one way and if not we answer the other, but, in one of the two cases our conscience is not clear.

Can we interpret the intent of the question or must we go by the strict wording?

Thank you.

/s/

### Answer:

July 2, 1997

MEMBERS OF THE JURY:

This is a response to your question about the meaning of Question 2(a) in Part V of the Verdict form.

The word "unless" and the phrase it introduces are, in the phrase used in your question, "really important."

The meaning of the question I have asked you to answer would be very different if it did not include the "unless" phrase. This is the "manifested intent" of the question (using "manifested intent" in the way I have defined it for you in contract law). This is also the "spirit" and purpose of the question.

Thus, you must interpret the question in accordance with the intent manifested by the "wording" of the question. I have not

used the phrase "strict wording" because I do not understand what you mean by "strict wording" as distinguished from "wording" alone. In any event, please interpret the question in accordance with the ordinary meaning of the words it uses to manifest its meaning to you.

In determining whether the notice specified in Question 2(a) of Part V was provided by Toyota, you should consider what a reasonable person in the position of Cooney Industrial (the recipient of the August 15, 1994 letter) would reasonably understand from reading the August 15, 1994 letter.

After receiving the verdict of the jury, and taking into account plaintiff's withdrawal of some claims and the court's ruling on others as a matter of law, the court ordered judgment for defendant based on answers of the jury that were, in the court's view, decisive against plaintiff as to all remaining claims.

## II.

The jury's findings have mooted numerous legal contentions plausibly asserted by one party or the other during the pretrial proceedings and trial. An analysis of the jury findings will help to focus remaining issues of law that are potentially material to the outcome of this case.

Part A, immediately below, considers the meaning of findings with respect to damage or harm, and their conclusiveness with respect to plaintiff's claims for breach of contract. Part B considers the jury's manifested overall view of the case and various contentions of the parties bearing on all other claims of plaintiff.

### A.

Defendant had maintained, throughout pretrial proceedings and trial, that it was entitled to judgment as a matter of law on plaintiff's breach of contract claims. Plaintiff was not seeking, and could not plausibly seek, reinstatement of a dealer relationship with defendant Toyota. Reinstatement was impossible; before commencing this civil action, plaintiff had accepted a Caterpillar dealership under terms incompatible with a simultaneous dealership for marketing Toyota's commercial vehicles. Along with other grounds for denial of damages, defendant contended that plaintiff was not entitled to any relief on a breach of contract claim without proof of harm or damage as defined in some applicable measure of recovery for breach of contract and that plaintiff had not, and could not proffer any admissible evidence to show any legally recognized basis for any finding of harm or damage. In pretrial proceedings the court had rejected this defense contention primarily because, in the court's view, the testimony of Ken Cooney, if fully credited by the jury in respects in which it clashed sharply with documentary and testimonial evidence offered by defendant, would support a finding of at least some dollar amount of damages for harm, even though far short of the amount plaintiff claimed.

The jury answered NONE to each of the damages questions it reached—VI.3(a), VI.4(a), and VI.6(a)—and did not reach other damages questions—VI.1, VI.2(a), and VI.5(a)—because of its answers against plaintiff on predicate questions regarding those alleged grounds for claims of entitlement to damages.

Plaintiff now asks the court to interpret the jury's several separate findings of no damage as falling short of an overall finding that plaintiff has proved no harm. This contention depends fundamentally on premises that are contrary to the structure of the verdict form itself and the court's instructions to the jury in explanation of the verdict form. Although some statements made in plaintiff's Memorandum in Support might be interpreted as making a more sweeping argument, I interpret this argument as confined to a challenge also made as an objection to the verdict form and charge after the charge was completed and before the jury commenced deliberations. (The court and counsel had an explicit understanding on the record, in accordance with Rules 49(a) and 51 of the Federal Rules of Civil Procedure, that no challenge to the verdict form or charge would be appropriate for later consideration unless made after the charge was given and before the jury commenced deliberating.)

Plaintiff objected to the court's refusal of plaintiff's request that the court include in the verdict form a generalized question on damages that would have allowed the jury to find some dollar amount without identification of any legally authorized measure of damages they were applying in making that finding. The court continues to hold the view that this ruling was appropriate. Plaintiff had a full opportunity to identify any other measure of harm or damage that could plausibly be claimed. The court invited plaintiff to propose an additional question for inclusion in the verdict form if plaintiff could identify an authorized measure of harm or damage and call attention to evidence supporting its submission to the jury. Even now, except for the attorneys' fees claim (rejected in Part III of this opinion), plaintiff has not identified any additional proposed measure of recoverable harm.

■ In summary, I hold that under the common law of contract generally, and the law of Massachusetts in particular, a plaintiff is not entitled to have a breach of contract claim submitted to a jury on a generalized allegation that some unspecified contractual obligation was violated and in some unspecified way caused some kind of harm or damage for which the jury may in its unfettered discretion make an award of a specific dollar amount. Legal recognition of a generalized claim of this kind would be in violation of the procedural provisions of Rule 49 of the Federal Rules of Civil Procedure. *See* Fed. R.Civ.P. 49(a) ("If in so doing [submitting on questions only] the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury."). Also, the effect would be to transfer, from authorized lawmakers to a jury, the authority to make fundamental public policy decisions (1) about whether contractual obligations enforceable in law arise out of the distinctive circumstances of a particular relationship between parties, and (2) about the characteristics of the relationship that determine the measure of damages and scope of liability when liability does exist.

No statute or precedent supports the adoption of a legal test that confers on a jury the authority to exercise this kind of policy choice that is fundamentally a lawmaking choice and is neither a finding of fact nor an evaluation of the kind ordinarily committed to juries.

Analogies point to the conclusion that when this kind of choice has not been made by constitutional or legislative mandate and must be made to determine the outcome of a case on a court's docket, that court must decide the issue, subject of course to plenary review on appeal. An issue of this kind was before the Supreme Judicial Court of Massachusetts, in a case involving the scope of legal duties of a landowner to an uninvited person on the land. By a 4–3 majority, the Supreme Judicial Court declined to accept plaintiff's request that it "abolish the trespasser rule," explaining:

> Because there is no community consensus, the jury would first consider whether the ordinarily prudent landowner recognizes any responsibility *at all* to care for the safety of an adult trespasser. The jury's resolution of the question would be likely to turn on such social policy concerns as the privileges that ought to attach to land ownership, or on the jury's view as to the proper allocation of the costs of serious injuries. A jury would thus determine, on a case by case basis, the existence or nonexistence of a legal duty of care. Such a determination would be unpredictable and would be made long after the event that prompted the inquiry. If the present case were to be tried and the facts recited above were in evidence, the jury would be warranted in finding that the plaintiff's intrusion was foreseeable by the defendants. The jury would then be required to determine whether present community values call for the exercise of care for the safety of foreseeable trespassers who are neither children nor known to be helplessly trapped. Such determinations are appropriately made by the court or the Legislature, as has heretofore been the practice, and not by juries.

*Schofield v. Merrill,* 386 Mass. 244, 435 N.E.2d 339, 342 (1982); *see also Kearney v.*

*Philip Morris, Inc.,* 916 F.Supp. 61, 70–71 (D.Mass.1996) (appeal dismissed by joint stipulation of the parties) (citing and discussing *Schofield* and additional precedents).

■ The verdict form and charge to the jury in this case submitted all questions (of historical fact and evaluation) that this court believed might be material under any of the plausibly arguable positions of the parties regarding contract, tort, and statutory duties determined by statute or precedent. In this court's view, the jury findings of no harm are decisive. On these jury findings, defendant is entitled to judgment against plaintiff on all breach of contract claims. The decisive effect of no-harm findings on other claims is explained in other parts of this opinion, below. I need not and do not address defendant's alternative legal arguments in support of this same outcome.

**B.**

In addition to the generalized claim for a right to recover damages for breach of contract on unspecified grounds, rejected in Part II.A, immediately above, plaintiff asserted claims for damages on grounds that Massachusetts legislation, codified in Massachusetts General Laws, ch. 93B, Regulation of Business Practices Between Motor Vehicle Manufacturers, Distributors, and Dealers, imposed obligations on Toyota with respect to its relationship with Cooney Industrial in the absence of "good cause" in each instance for each kind of conduct. These contentions and Toyota's response to them presented legal and factual issues of considerable complexity. As stated in Part I of this opinion, the court decided against defense contentions that all these issues could be resolved against plaintiff as a matter of law, and instead fashioned the verdict form to obtain answers from the jury regarding each of the questions of fact or evaluation as to which plausible arguments could be presented that the question is appropriately one for jury resolution.

One of the key defense arguments, throughout pretrial and trial proceedings, has been that the determination of "good cause" is for the court, not the jury, because it involves consideration of many factors, including an understanding of policy choices manifested by legal rules that a jury is not authorized to disregard. I need not and do not conclude, as defendant has argued, that all "good cause" issues in this case must be decided as a matter of law for defendant. The reason I need not decide this reasonably debatable issue in this case is that the jury verdict, as a whole, supports a judgment for defendant without a ruling by the court for defendant on this purely legal ground.

The jury verdict as a whole manifested a measured and reasoned appraisal of the conflicting contentions of the parties and the conflicting evidence they presented. The jury arrived at a view of the case that rejected the more extreme contentions of each party. Thus, it is true that the jury answered some questions in the way Cooney Industrial asked them to answer. They answered other questions, however, in a way that not only found against the plaintiff's claims but as well found that the plaintiff violated some of its contractual obligations to the defendant.

Plaintiff argues that its violations should be excused or disregarded and that plaintiff should be granted some form of relief in order to serve the manifest public policy objectives of Chapter 93B of Massachusetts General Laws. Consideration of this contention will be aided by a comparison of the several findings of the jury favorable to plaintiff's contentions alongside the jury's findings that are contrary to plaintiff's contentions.

The parts of the jury verdict potentially favorable to plaintiff are stated first, identified in each instance by the number or numbers of the questions as they appear in the full verdict form reproduced in Part I of this opinion, above.

I.2: "NO," Ken Cooney did not "indicate to Jack Sprouls, by word or conduct, that Cooney consented to the removal of New Hampshire from Cooney Industrial's APR ["area of primary responsibility"]."

I.5(a), (b): "YES," Toyota's conduct "during the period of the 1992 Dealer Agreement" did "have an effect on Cooney Industrial's ability to perform Cooney Industrial's

obligations under the 1992 Dealer Agreement," making it "materially more difficult for Cooney Industrial to perform."

II.1(e), (f), (g), (h): Some factors bearing on whether "Toyota had good cause for allowing the 1992 Dealer Agreement to come to an end on November 30, 1994" weighed in plaintiff's favor. These included:

(e) "The amount Cooney Industrial committed (including financial obligations incurred), during the period covered by the 1992 Dealer Agreement, to investment for the purpose of enabling Cooney Industrial to meet its obligations under the 1992 Dealer Agreement," "slightly" favoring Cooney.

(f) "The extent to which any of the investment commitment by Cooney Industrial was for permanent capital investment," "slightly" favoring Cooney.

(g) "The extent to which, during the period covered by the 1992 Dealer Agreement, Cooney Industrial's services to the public were or were not adequate to meet the needs of the public in the dealership area," "moderately" favoring Cooney.

III.1(a), (g), (h): Some factors bearing on whether "Toyota had good cause for changing the 1992 Dealer Agreement terms from 2 years to 4 months in the 1994 Dealer Agreement commencing on October 1, 1994" weighed in plaintiff's favor. These included:

(a) "The amount of business transacted by Cooney Industrial during the period covered by the 1992 Dealer Agreement in comparison with the amount of business available to Cooney Industrial in the market conditions prevailing at that time," "moderately" favoring Cooney.

(g) "The extent to which, during the period covered by the 1992 Dealer Agreement, Cooney Industrial's services to the public were or were not adequate to meet the needs of the public in the dealership area," "moderately" favoring Cooney.

(h) "The extent to which, during the period covered by the 1992 Dealer Agreement, Cooney Industrial had or failed to have facilities, equipment, vehicle parts, and qualified sales and service personnel sufficient to provide reasonably for the needs of the public," "moderately" favoring Cooney.

III.2(a), (b): The three factors just recited weighed heavily enough to lead the jury to answer "NO," they did not find that "Toyota had good cause for changing the 1992 Dealer Agreement terms from 2 years to 4 months in the 1994 Dealer Agreement commencing on October 1, 1994."

IV.1(a), (f), (g), (h), (i), (k): Some factors bearing on whether "Toyota had good cause for not including the provision for a 6–year term if Cooney Industrial met the market share requirement" weighed in plaintiff's favor. These included:

(a) "The amount of business transacted by Cooney Industrial during the period covered by the 1992 Dealer Agreement in comparison with the amount of business available to Cooney Industrial in the market conditions prevailing at that time," "slightly" favoring Cooney.

(f) "The extent to which any of the investment commitment by Cooney Industrial was for permanent capital investment," "moderately" favoring Cooney.

(g) "The extent to which, during the period covered by the 1992 Dealer Agreement, Cooney Industrial's services to the public were or were not adequate to meet the needs of the public in the dealership area," "moderately" favoring Cooney.

(h) "The extent to which, during the period covered by the 1992 Dealer Agreement, Cooney Industrial had or failed to have facilities, equipment, vehicle parts, and qualified sales and service personnel sufficient to provide reasonably for the needs of the public," "moderately" favoring Cooney.

(i) "The nature and extent of any breaches, defaults, or violations by Cooney Industrial of the terms and provisions of the 1992 Dealer Agreement," "moderately" favoring Cooney.

(k) "Whether, on the basis of the evidence before you, and reasoning from that

evidence and not upon the basis of any matters not in evidence, you find that it would be injurious or beneficial to the public welfare that a dealership agreement exactly like that of the 1992 Dealer Agreement between Cooney Industrial and Toyota come to an end on November 30, 1994," "moderately" favoring Cooney.

IV.2(a), (b): The six factors just recited weighed heavily enough to lead the jury to answer "NO," they did not find that "Toyota had good cause for not including in the 1994 Dealer Agreement the provision for a 6–year term if Cooney Industrial met the market share requirement."

The decisive legal question is whether these answers are material to the outcome of this case in view of other answers of the jury, and in particular the following questions and answers against plaintiff's contentions.

I.1(a): "NO," the jury did not find that "Toyota's removal of New Hampshire from Cooney Industrial's area of primary responsibility ("APR") on February 1, 1994" was "a cause in fact of a measurable decline in Cooney Industrial's net income."

I.3: "NO," the jury did not find that "Cooney Industrial, by December 31, 1993, equal[ed] or exceed[ed], and thereafter maintain[ed], Toyota National Retail Order Market Share in its APR."

I.4: "YES," an "agreement by Cooney Industrial to equal or exceed, and thereafter maintain, Toyota National Retail Order Market Share (National ROMS) in its APR" was "a material feature of the 1992 Dealer Agreement."

II.1(a), (c), (d), (i), (j): Some factors bearing on "whether Toyota had good cause for allowing the 1992 Dealer Agreement to come to an end on November 30, 1994" weighed in Toyota's favor. These included:

(a) "The amount of business transacted by Cooney Industrial during the period covered by the 1992 Dealer Agreement in comparison with the amount of business available to Cooney Industrial in the market conditions prevailing at that time," "heavily" favoring Toyota.

(c) "The amount of business transacted by Cooney Industrial under the dealer agreements in effect before August 15, 1991 in comparison with the amount of business available to Cooney Industrial in the market conditions prevailing at that time," "slightly" favoring Toyota.

(d) "Whether Cooney Industrial complied with time requirements for the establishment of a new facility under the 1990 Dealer Agreement," "slightly" favoring Toyota.

(i) "The nature and extent of any breaches, defaults, or violations by Cooney Industrial of the terms and provisions of the 1992 Dealer Agreement," "moderately" favoring Toyota.

(j) "The offer by Toyota to Cooney Industrial in September 1994 of a replacement dealer agreement to commence on October 1, 1994 and Cooney Industrial's non-acceptance of that offer," "heavily" favoring Toyota.

II.2(a), (b): The five factors just recited weighed heavily enough to lead the jury to answer "YES," Toyota did have "good cause for allowing the 1992 Dealer Agreement to come to an end on November 30, 1994."

V.1: "YES," "Toyota's letter of August 15, 1994" was "a written notice with a detailed statement of Toyota's reasons for changing the length of the term of the 1994 Dealer Agreement from 2 years (as it was in the 1992 Dealer Agreement) to 4 months (as Toyota proposed for the 1994 Dealer Agreement)."

V.2(b)(1): "NO," the jury did not find that Toyota offered "in the 1994 Dealer Agreement only terms different from those contained in the 1992 Dealer Agreement."

V.2(b)(2): "YES," Toyota did, "in addition to any oral notice, give written notice, in the letter of August 15, 1994, stating Toyota's reasons for offering terms different from those contained in the 1992 Dealer Agreement."

One point of detail worthy of emphasis is that all these findings were compatible with each other. At first glance, one might be concerned about a potential conflict between I.3 ("NO," the jury did not find that "Cooney

Industrial equal[ed] or exceed[ed], and thereafter maintain[ed] Toyota National Retail Order Market Share in its APR") and IV.1(i) ("The nature and extent of any breaches, defaults, or violations by Cooney Industrial of the terms and provisions of the 1992 Dealer Agreement" "moderately" favored Cooney Industrial in relation to the "good cause" question submitted in Part IV of the verdict form). No conflict exists, however, because the Toyota National ROMS was a condition of Toyota's promise of a benefit, not an unconditional obligation of Cooney Industrial, and the criteria for the "good cause" issue in Part IV differed from the ROMS condition about which I.3 inquired.

What conclusions may one draw about the jury's manifested view of the case as a whole from all the recited findings, taken together in the context of the evidence before the jury and the instructions to the jury in the verdict form and explanatory instructions? What bearing do these conclusions have upon the materiality of any legal issues for which clear and decisive answers are not provided in the available sources of authority to which this or a higher court may look for guidance about the final outcome in this case?

*First.* All debatable issues with respect to burden of persuasion on each of the foregoing questions have become moot in view of the jury's findings by a preponderance of the evidence. Also, I conclude that, in view of these findings, the questions as to which the jury found no preponderance of the evidence either way lack sufficient weight as factors bearing on any evaluative issue to affect outcome of this case; they are now moot.

*Second.* Taken together, all these jury findings express a view that each of the parties, in the course of their ongoing relationship violated some obligations to the other and that some of the violations of each were material. As noted above, in Part II.A of this opinion, the jury also found that, in the end, Cooney Industrial had failed to show any harm or damage. For this reason standing alone, I have concluded that plaintiff's claims fail. I conclude also that, apart from failure to prove any amount of harm within a legally authorized measure of damages, the findings recited above support a conclusion

that the court should deny relief to each party against the other because of their respective violations of obligations to each other.

## III.

Plaintiff's Motion to Amend Judgment (Docket No. 124) asks the court to reconsider its denial of plaintiff's request for attorneys' fees and costs under Mass.Gen.Laws ch. 93B, § 12A (last argued before the court and denied by the court, after verdict, on July 2, 1997) and to amend the Judgment of July 3, 1997 accordingly.

Plaintiff's stated contention is that:

the jury's findings established violations of M.G.L. ch. 93B, § 4(3)(e), in that defendant lacked good cause for its actions and failed to provide the required notice. Section 4(3)(e) lists certain "violation[s] of paragraph (a) of section three" under the statute and lacks any statement that damage is a necessary element of those violations. Nevertheless, the court interpreted section 4(3)(e) to require a finding of damage arising from the lack of good cause or lack of notice as a condition to establishing a statutory violation. In so doing, the Court violated multiple principles of statutory construction.

Plaintiff's Memorandum in Support, Docket No. 125, pages 1–2.

Toyota responds, first, by disputing the premise of plaintiff's contention that the jury findings are sufficient to constitute a factual finding of a violation of Chapter 93B and, second, by contending that the jury's findings of no damage defeat plaintiff's claim for attorneys' fees as well as all other claims. Defendant's Memorandum in Opposition, Docket No. 133, page 2. Defendants' second contention calls attention to provisions of Chapter 93B, in an earlier part of § 12A than that on which plaintiff relies primarily, stating more broadly the statutory authorization for an award of attorneys' fees to a franchisee:

[a]ny franchisee or motor vehicle dealer **who suffers any loss of money or property, real or personal, as a result** of the use or employment ... of an unfair method of

competition or an unfair or deceptive act or practice declared unlawful by sections three through eleven … may bring an action in the superior court for damages. . . .

Mass.Gen.Laws ch. 93B, § 12A (emphasis added). That section also says:

[i]f the court finds for the franchisee or motor vehicle dealer in any action commenced hereunder, that there has been a violation of sections three to eleven … such franchisee or motor vehicle dealer shall, in addition to any other relief provided for by this section … be awarded reasonable attorneys' fees. . . .

*Id.*

■ No Massachusetts court decision addresses the precise issue of statutory interpretation presented by this case. In these circumstances, a federal court's prediction of the likely resolution of the issue by the state's highest court is guided by the most compelling analogies in state law decisions of that state, when they exist, and decisions of courts of other states with respect to interpretation of similar statutes. *Blinzler v. Marriott Int'l, Inc.,* 81 F.3d 1148, 1151 (1st Cir.1996). Compelling analogies do exist in this instance, and they require a decision of this issue of statutory interpretation in favor of the defendant.

■ The Supreme Judicial Court of Massachusetts has interpreted virtually identical language in the Consumer Protection Act, Chapter 93A, as meaning that "relief solely in the form of attorneys' fees may not be had." *Jet Line Servs., Inc. v. American Employers Ins. Co.,* 404 Mass. 706, 718, 537 N.E.2d 107, 115 (1989). Under § 11 of Chapter 93A, a plaintiff must be entitled to relief in some other respect in order to be entitled to an award of attorneys' fees. *See Martha's Vineyard Auto Village, Inc. v. Newman,* 30 Mass.App.Ct. 363, 369–70, 569 N.E.2d 401, 405, *rev. denied,* 409 Mass. 1105, 571 N.E.2d 28 (1991) ("A plaintiff gets no bounty in the form of attorney's fees 'for merely identifying an unfair or deceptive act or practice' . . . .") (internally quoting *Jet Line* ).

■ New Hampshire has enacted legislation similar to Chapter 93B of the Massachusetts General Laws, and the First Circuit has predicted interpretation of that statute in a way contrary to plaintiff's contention here. *Poulin Corp. v. Chrysler Corp.,* 861 F.2d 5, 7 (1st Cir.1988) (jury finding in favor of plaintiff but jury award of zero damages; trial court determined, "warrantably" in the appellate court's view, that the "jury's award of zero damages had a rational basis on record"; "it follows that plaintiff has failed to establish an essential part of its proof and judgment should have been entered for defendant").

In the present case, the evidence before the jury was sufficient to support, if not compel, a finding that the plaintiff Cooney Industrial substantially benefitted rather than sustained any loss or harm from accepting a franchise from Caterpillar that prohibited Cooney Industrial from representing at the same time any competitor of Caterpillar, including defendant Toyota. Quite apart from other evidence before the jury, this was sufficient to warrant the jury findings of no damage in the unique circumstances of this case.

For these reasons, I conclude that plaintiff's motion to amend the judgment must be denied.

Plaintiff advanced additional arguments grounded in assertions about the public policy objectives of Chapter 93B and "principles of statutory construction" allegedly violated by the interpretation of Chapter 93B in the way I have concluded is appropriate under the guidance of the Massachusetts and First Circuit decisions cited above. I conclude, however, that even if plaintiff's arguments were more persuasive than those made here, still it would be inappropriate for this court to make a prediction based on generalizations of policy and principle when they conflict with guidance in precedents binding on this court. For this reason I do not address these more generalized contentions of the plaintiff.

### IV.

Plaintiff's motion for new trial raises no issue of fact or law not decided for reasons explained on the record during pretrial and

trial proceedings. The jury verdict is well supported by the evidence received for their consideration, and the court's view remains the same on rulings as to admissibility and instructions to the jury (both within the verdict form as fashioned, and in the court's charge to the jury), for the reasons explained at the time the rulings were made. Only selected issues of potentially broader impact beyond the unique features of this case are discussed here.

### A.

As noted in Part II.A above, an overriding factor in the present case is that the jury could and did reasonably find that none of the Toyota violations of obligations to Cooney Industrial arising out of their contracts and relationship was cause in fact of any measurable harm or damage, either by any alleged decline in Cooney Industrial's net income or in any other way within any legally recognized measure of harm or damage.

### B.

Issues concerning what is variously called "mitigation of damages" or "avoidable consequences" may present difficult and unsettled substantive and procedural problems in franchise litigation generally, but other entirely sufficient grounds for judgment for defendant in this case, explained in other parts of this opinion, make it unnecessary to probe more deeply the plausibly debatable issues about a potential defense of mitigation or avoidable consequences. For these reasons, that part of Plaintiff's Motion for Judgment on Affirmative Defense and for New Trial that concerns the "Affirmative Defense" is denied.

### C.

Plaintiff's request for new trial is based in part on a request that the court reconsider various rulings made during pretrial proceedings and trial, which have been discussed earlier in this opinion.

In part, also, the request is based on an assertion that the verdict was against the weight of the evidence. The court's considered view is instead that the verdict was the outcome of a measured, reasoned, and entirely supportable evaluation of the conflicting testimony and differing inferences that might reasonably have been drawn from both documentary and testimonial evidence. The jury has spoken, and its verdict must stand.

Plaintiff's request for new trial is without merit.

### ORDER

For the foregoing reasons, it is ORDERED:

(1) Plaintiff's Motion to Amend Judgment (Docket No. 124) is denied.

(2) Plaintiff's Motion for Judgment on Affirmative Defense and for New Trial (Docket No. 126) is denied.

(3) The Clerk is directed to enter forthwith on a separate document a Final Order accordingly.

### Final Order

For the reasons stated in the Opinion of this date, it is ORDERED:

(1) Plaintiff's Motion to Amend Judgment (Docket No. 124) is DENIED.

(2) Plaintiff's Motion for Judgment on Affirmative Defense and for New Trial (Docket No. 126) is DENIED.

(3) A copy of this Final Order and a copy of the Opinion of September 8, 1997 will be delivered forthwith to the Clerk of the Court of Appeals for the First Circuit for filing in Court of Appeals No. 97–1981.