MARY L. SWANSON & another[1] vs. BANKERS LIFE COMPANY.

Plymouth. March 11, 1983. — June 7, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Consumer Protection Act, Insurer, Availability of remedy, Unfair act or practice.*

An insurance company was not liable under G. L. c. 93A, the Consumer Protection Act, for its delay in paying a wife's meritorious claim for medical services furnished her under a group insurance policy providing coverage for any condition existing on her husband's retirement date, if she was at that time totally disabled, where the plaintiffs, who had failed to bring to the attention of the insurer the fact that the wife's condition existed on her husband's retirement date, suffered no loss of money or property from the delay as a result of the insurer's use or employment of any unfair or deceptive act or practice declared unlawful under c. 93A, § 2(*a*). [348-350]

CIVIL ACTION commenced in the Brockton Division of the District Court Department on March 29, 1979.

The case was heard by *Killam*, J., on motions for summary judgment.

*Francis J. Lynch, II*, for the plaintiffs.
*Harris G. Gorab* for the defendant.

WILKINS, J. This case presents the question whether the defendant insurance company (Bankers Life) is liable under G. L. c. 93A for its delay in paying the plaintiffs' meritorious claim for insurance coverage of certain medical and hospital services furnished to Mrs. Swanson. The parties agree on the amount of coverage to which the plaintiffs were entitled, and Bankers Life ultimately delivered drafts totaling that amount to the Swansons' attorney.[2] The dis-

---

[1] Arthur G. Swanson.

[2] These drafts (with one exception) were made payable to the providers, pursuant to authorizations signed by the plaintiffs. Apparently, the plaintiffs' counsel has retained these drafts.

pute, therefore, centers on whether, under G. L. c. 93A, § 9, as amended through St. 1978, c. 478, § 45, the plaintiffs suffered any loss of money or property in the delay as a result of Bankers Life's use or employment of an unfair or deceptive act or practice declared unlawful under G. L. c. 93A, § 2(a).[3]

A judge in a District Court decided the case on cross motions for summary judgment on the basis of affidavits and accompanying documents submitted by Bankers Life. The Swansons presented no affidavits. The judge entered judgment for the plaintiffs in the amount which the parties agreed was payable under the policy ($6,433.46) and then awarded damages separately under G. L. c. 93A at twice that amount, plus interest from January 19, 1979 (the date of the plaintiffs' G. L. c. 93A demand letter), and attorney's fees. On Bankers Life's appeal to the Appellate Division of the District Courts, the judgment was vacated. The Appellate Division concluded that there was no G. L. c. 93A violation, approved the judgment in the amount of $6,433.86, and ordered the award of interest on $6,433.86 from March 24, 1979 (the date of which the Swansons' counsel sent certain information to Bankers Life) to May 1, 1979 (the date on which Bankers Life sent the drafts in payment of its obligations under the policy). The plaintiffs have appealed to this court from so much of the decision of the Appellate Division that denied multiple damages. Bankers Life has not appealed. We agree with the disposition ordered by the Appellate Division.

---

[3] The plaintiffs' claim is based on G. L. c. 93A, § 9, before its amendment by St. 1979, c. 406, § 1. That amendment, effective October 18, 1979, greatly broadened the scope of § 9 and made explicit reference to G. L. c. 176D, § 3(9), which defines unfair claim settlement practices. See *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 675 (1983). Even under the law prior to the 1979 amendment, the plaintiff Arthur G. Swanson, who was covered under the group insurance policy issued by Bankers Life, could assert a G. L. c. 93A violation because of improper claim settlement practices. *Id. Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 81-82 (1977).

The group insurance policy provided coverage for Mrs. Swanson through the calendar year following Mr. Swanson's retirement on August 31, 1977, for any condition existing on his retirement date, if she was at that time totally disabled. Prior to Mr. Swanson's retirement, their counsel sought and received clarification to that effect from an organization administering claims for Bankers Life. In the spring of 1978, Mrs. Swanson was hospitalized for the treatment of lung cancer, and the Swansons made claims under the policy for payment toward various expenses they had incurred. On June 28, 1978, Bankers Life's representative wrote Mr. Swanson that coverage for Mrs. Swanson's treatment was not available because her treatment did not relate to a condition causing total disability on the date of Mr. Swanson's retirement. Counsel for the Swansons replied that medical records would show that the lung tumor existed on August 31, 1977, and that hospital records in the insurer's possession should authenticate that allegation. The record does not show that Bankers Life had any such hospital records. Bankers Life on July 20, 1978, wrote Mr. Swanson requesting "a completed statement of claim form" from the attending physician. Numerous claim forms were then submitted. These claim forms, signed by the Swansons, authorized any physician signing the form to release "any information acquired in the course of examination or treatment." On one of the claim forms, received by the Bankers Life's representative in September, 1978, a physician stated under the heading "Date Symptoms First Appeared": "Lesion of right upper lobe noted on chest x-ray elsewhere in 1975."[4]

On October 27, 1978, Bankers Life wrote Mr. Swanson that the bills submitted related to a "new condition" (one not existing on the date he retired) and that it could only consider charges in connection with disabilities existing at

---

[4] In the early stages of this matter Bankers Life's interests were handled by a claims administration organization and later by Bankers Life's employees. We refer to Bankers Life in each instance because nothing turns on the change.

the time his employment terminated. A similar letter was sent on December 1, 1978. On January 19, 1979, counsel for the Swansons sent Bankers Life a demand letter under G. L. c. 93A. The letter made no reference to a condition existing on August 31, 1977, nor did it indicate where Bankers Life could obtain information establishing that the condition for which Mrs. Swanson had been treated existed on August 31, 1977. Bankers Life made no response to the demand letter within thirty days. On March 14, 1979, a representative of Bankers Life spoke with the Swansons' attorney by telephone, advising him that Bankers Life did not have any concrete evidence that Mrs. Swanson's malignancy existed on August 31, 1977. Counsel replied that he would obtain an authorization for Bankers Life to obtain that information, that certain hospital records would establish the necessary facts, that he was not abandoning the G. L. c. 93A claim, and that he had prepared a complaint but would not file it until Bankers Life had an opportunity to investigate. On March 24, 1979, counsel wrote Bankers Life enclosing an authorization signed by Mrs. Swanson and suggesting where relevant information could be obtained. The complaint was filed nevertheless on March 29, 1979. On April 10, 1979, Bankers Life sent out letters requesting information from doctors and hospitals, and advised counsel for the Swansons that it had done so. By April 20, 1979, Bankers Life had received a diagnostic radiology report indicating that "the lung lesion" was present in January, 1977. On April 23, 1979, Bankers Life called counsel for the Swansons to say that it intended to pay all benefits due under the contract. On May 1, 1979, Bankers Life sent drafts to the Swansons' attorney, the total of which represented the amounts due under the policy.

A policyholder may have a claim under G. L. c. 93A, § 9, as amended through St. 1978, c. 478, § 45, for unfair or deceptive acts or practices in the handling of claims for the payment of insurance benefits. See *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 82 (1977). The heart of the plaintiffs' claim is that Bankers Life had an obligation to

investigate the claim with greater diligence than it did. They assert that the negligent failure to do so was an unfair or deceptive act or practice made unlawful under G. L. c. 93A, § 2. They point to G. L. c. 176D, § 3(9)(*d*), as appearing in St. 1972, c. 543, § 1, which defines as an unfair claim settlement practice "[r]efusing to pay claims without conducting a reasonable investigation based upon all available information."[5] We agree that recovery may be had for a deceptive act that is the result of a defendant's negligence. See *Linthicum* v. *Archambault*, 379 Mass. 381, 388 (1979); *MacGillivary* v. *W. Dana Bartlett Ins. Agency of Lexington, Inc.*, 14 Mass. App. Ct. 52, 58-61 (1982). No intention to deceive need be shown, and indeed an act might be deceptive under § 9 even absent any showing of negligence. But not every negligent act is unfair or deceptive and thus unlawful under G. L. c. 93A, § 2. See *Mechanics Nat'l Bank* v. *Killeen*, 377 Mass. 100, 109 (1979).

Bankers Life did not engage in any deceptive act or practice. Its position with regard to the plaintiffs' claim was clearly stated to the plaintiffs. At least under § 9, prior to its significant amendment in 1979, negligent claim handling cannot alone be a deceptive act where the insurer discloses its position.

In determing whether an act or practice is unfair, as opposed to deceptive, we must evaluate the equities between the parties. *Id.* at 110. What a defendant knew or should have known may be relevant in determining unfairness. See *Nei* v. *Burley*, 388 Mass. 307, 316 (1983). Similarly, a plaintiff's conduct, his knowledge, and what he reasonably should have known may be factors in determining whether an act or practice is unfair.

---

[5] As now amended, G. L. c. 93A, § 9, refers to G. L. c. 176D, § 3(9), but § 9 did not refer to that clause prior to the effective date of St. 1979, c. 406, § 1. We have not decided whether a single act can constitute a violation of G. L. c. 176D, § 3(9)(*d*), as incorporated in the current § 9. See *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 676 & n.4 (1983).

On the question of unfairness, the plaintiffs' counsel knew that coverage of the claim required that the condition for which Mrs. Swanson was hospitalized be one that existed on the date of Mr. Swanson's retirement. We see nothing unfair under G. L. c. 93A, § 9, prior to its amendment in 1979, in placing the burden on the Swansons, who were represented by informed counsel, to demonstrate to Bankers Life the fact of the preexisting condition. The plaintiffs' demand letter made no reference to a condition existing on the date of Mr. Swanson's retirement. Bankers Life responded reasonably promptly once the plaintiffs provided the necessary authorizations and information. Even assuming that Bankers Life was negligent in not focusing its investigation, once it had some notice that the condition may have existed on the date of Mr. Swanson's retirement, we conclude that there was no dispute as to any material fact bearing on whether Bankers Life engaged in an unfair act or practice. In dealing with insurance claims of the character involved in this case, the insured has an obligation to bring the appropriate, specific information to the attention of the insurer.

Because there was no violation of G. L. c. 93A, § 2(*a*), there is no need to discuss the plaintiffs' claim for multiple damages.

Judgment shall be entered in accordance with the decision of the Appellate Division of the District Courts.

*So ordered.*