MARTHA'S VINEYARD AUTO VILLAGE, INC. *vs.* ROBERT W.
NEWMAN & others.[1]

No. 89-P-555.

Dukes County. January 10, 1991. - March 27, 1991.

Present: KASS, KAPLAN, & GILLERMAN, JJ.

*Consumer Protection Act*, Motor vehicle franchise, Businessman's claim,
Attorney's fees. *Motor Vehicle*, Dealer.

In an action under G. L. c. 93A, § 11, the plaintiff, the operator of an
automobile dealership, demonstrated only scant evidence of unfair and
deceptive business activities by the defendants and did not carry the
burden of showing a causal connection between their violations of c. 93,
§ 2, and any loss to its business; thus, judgment was properly entered in
favor of the defendants. [367-369]

In an action under G. L. c. 93A, § 11, where the plaintiff suffered no harm
from the defendants' activities and was not entitled to substantive re-
covery, it was not entitled to an award of attorneys' fees. [369-370]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 19, 1981.

The case was heard by *John J. Irwin, Jr.*, J.

*Howard M. Miller* for the defendants.

*Leo D. Allen* (*Michael J. Underhill* with him) for the
plaintiffs.

KAPLAN, J. Two automobile dealers, Edmond J. Clermont
and Robert W. Newman, have been long at war in this liti-
gation, commenced on October 19, 1981. After considerable
attrition of parties and theories, as mentioned below, the liti-
gation was reduced to an action by the plaintiff Martha's
Vineyard Auto Village, Inc. (MVAV), owned by Clermont,
the only Ford and Lincoln-Mercury automobile franchisee on
Martha's Vineyard from 1977 to 1984, against the defend-

---

[1]See notes 2 and 3 infra.

ants, Newman individually, three franchisee companies owned by him in Hartford, Connecticut,[2] and a garage-service station on the island.[3] The action, so reduced, invoked G. L. c. 93A, § 11 (unfair trade practices by one business person against another), and arose out of activities of the defendants on the island, with alleged loss to the plaintiff. The case was tried without a jury on August 29-31, 1988. A judge of the Superior Court held that there had been a few violations of G. L. c. 93A, § 2 (declaring unfair or deceptive practices illegal), underlying the § 11 claim, but that these did not cause any damage to the plaintiff. Nevertheless, he awarded attorneys' fees and costs of $112,128 to the plaintiff under § 11. The plaintiff appeals, contending that damage was proved. The defendants cross-appeal, contesting the award of attorney's fees.

1. *Course of the litigation.* The theory that the plaintiff now puts forward is almost entirely unrelated to those asserted in the original eighteen-count complaint. At that time, the plaintiff's charges centered upon two alleged conspiracies between some of the current defendants and Ford Motor Company (Ford) to establish a de facto sales franchise on Martha's Vineyard, competing with the plaintiff's franchise there, in violation of G. L. c. 93B, § 4(3)(*l*)(creating a "bill of rights" for automobile dealers), the other alleging a similar scheme involving Ford, the present defendants, and others to compete with a leasing subsidiary of MVAV.[4]

Section 4(3)(*l*) of c. 93B, inserted by St. 1970, c. 814, § 1, prohibits motor vehicle manufacturers from "arbitrarily and without notice to existing franchisees . . . grant[ing] or enter[ing] into a franchise or selling agreement to or with an additional franchisee who intends or would be required by such franchise or selling agreement to conduct its dealership

---

[2]Newman Lincoln Mercury, Inc., Williams Ford, Inc., and Westwood Auto Leasing, Inc. Westwood has a leasing branch on Martha's Vineyard.

[3]Edgartown Texaco Service, Inc.

[4]Other connected allegations sought to bring in violations of G. L. c. 93B, § 4(1) (proscribing unconscionable conduct by distributors toward dealers), interference with contractual or advantageous relations, breach of contract, and negligence.

operations from a place of business situated within the relevant market area of an existing franchisee or franchisees representing the same line make . . . ." The defendants were selling vehicles through the Hartford dealerships by soliciting sales on Martha's Vineyard: this, the plaintiff claimed, violated the statute as well as the terms of the Ford dealer franchise agreement.

In 1984, after three years of discovery, the plaintiff amended its complaint to include two additional counts under G. L. c. 93A, § 11, alleging violations under G. L. c. 93A, § 2 (and adding an additional defendant, Williams Ford, Inc.). Perhaps anticipating the weakness of the original theory, the plaintiff, without alleging additional facts, now recharacterized the defendant's actions in selling and leasing on Martha's Vineyard as "unfair and deceptive trade practices." The defendants moved for summary judgment on all counts. A judge of the Superior Court allowed the motion, on August 24, 1984, as to all but the two c. 93A counts. The crux of his decision was that Ford's dealer franchise agreement did not give the dealer an exclusive right to sell vehicles within the "dealer locality" and that the defendants had not created a dealership on Martha's Vineyard within the meaning of the statute. Although the judge found no activity on the defendants' part denounced by c. 93B, he said the plaintiff "at the very least produced facts regarding the oppressiveness of defendants' conduct and resulting loss of business to MVAV" sufficient to avert summary judgment on the c. 93A counts.

Following the decision, the plaintiff in July and August, 1986, settled out of court on the leasing count with Ford and some defendants not now parties. This left the § 93A sales count.

2. *Trial of the c. 93A claim.* Thus we reach what we have called the present reduced action. This, as of the time of the partial grant of summary judgment, alleged, as we have noted, that the very attempt by the defendants to sell Ford and Lincoln-Mercury cars and provide services to Vineyard residents, although without establishing a dealership in the

area, was an "unfair and deceptive" trade practice. In October, 1986, the plaintiff moved an amendment of the already amended complaint to charge specifically that the defendants had tampered with odometers and schemed to sell vehicles at a loss in order to drive MVAV out of business. Evidently the judge did not act formally on the motion to amend, but he did not disallow proof on these points.

The action was tried, jury-waived, in August, 1988.[5] After noting that MVAV was the sole licensed Ford and Lincoln-Mercury dealer on Martha's Vineyard from March, 1977, to June, 1984, and reiterating that such franchises did not prohibit dealers from selling outside their own dealer localities, the judge went on to find: During the period mentioned, MVAV's new vehicle sales went from a high of 163 (in 1978) to a low of 78 (in 1983). Newman and the companies he controlled sold 302 vehicles on Martha's Vineyard in this period.[6] They paid finders' fees to Martha's Vineyard residents to seek out customers on the island; at MVAV's request, Ford asked Newman to stop this practice, but he refused. The defendants had "underpriced cars, tampered with odometers and sold vehicles with incorrect mileage amounts," but "only six cars were sold by use of these practices," and "arguably" these were sold on Martha's Vineyard. Newman had "forced some employees into giving false testimony in their depositions," but these persons later recanted in affidavits.

To come to the judge's rulings of law, he did not accept the plaintiff's theory that the defendants' mere sales on the island violated c. 93A, § 2, and so would reach § 11. He ruled as violations of § 2 the defendants' "fraudulently tamper[ing] with odometers in vehicles they later sold to unsuspecting consumers" and "suborn[ing] perjury by intimidat-

---

[5]The trial judge was not the judge who acted on the motion for summary judgment.

[6]Defendant Edgartown Texaco Service, Inc., was alleged to have assisted Newman in selling cars on the island. The judge made no findings regarding this defendant and it is not a party to the appeal.

ing witnesses." Less clearly, he also appears to have ruled that "underpricing" was a violation.

The judge entered judgment for the defendants because the plaintiff had "not met its burden of proving a causal connection between its losses and the defendants' activities." He awarded the plaintiff attorneys' fees for having proved unfair and deceptive behavior by the defendants.

3. *Plaintiff's appeal.* The plaintiff has abandoned its blanket contention that defendants' sales on Martha's Vineyard were in themselves, without more, violations of c. 93A, § 2; it now argues that the evidence at trial "conclusively established . . . that defendants sold at least 302 motor vehicles on Martha's Vineyard through unfair and deceptive trade practices, including odometer tampering and selling at a loss," from which it follows, the plaintiff contends, that the defendants should answer to the plaintiff for the profits attributable to those sales.

(a) Analysis of the record shows that the plaintiff provided scant evidence of unfair and deceptive business activities by the defendants on the island.[7]

Plaintiff points to the deposition testimony of Joseph Corey, a former general manager of Williams Ford, Inc., one of the Newman companies. Corey testified to various incidents of odometer tampering by the defendants' employees — a deceptive practice according to c. 93A, § 2, and see G. L. c. 266, §§ 141 & 141A — but to sales of only two tampered vehicles to residents of the island.[8] He said also that on two occasions the defendants sold vehicles to businesses on the island at a loss,[9] and that Newman had confided to him on other occasions that he wanted to drive MVAV out of business. During pretrial discovery the defendants admitted (by failure to deny) that they had sold 302

---

[7]Evidence there was that the defendants had engaged in odometer tampering in Connecticut, but virtually no evidence that tampered vehicles were sold on Martha's Vineyard or elsewhere in Massachusetts.

[8]Even so, he was unable to say that the sales actually took place on the island.

[9]As to one of these deals, the defendants disputed the figures, and claimed there was a profit margin.

cars on the island between 1977 and 1984 and that at least one of these had an altered odometer.[10] If we accept up to six as the judge's figure of underpriced sales, there was still nothing resembling a systematic scheme of predatory pricing, sustained by one with economic power, that would fall under c. 93A by reference to the Federal analogues that are brought into play by c. 93A, § 2(*b*). See *Matsushita Elec. Industrial Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 588-595 (1986); *Barry Wright Corp.* v. *ITT Grinnell Corp.*, 724 F.2d 227, 230-236 (1st Cir. 1983). The "subornation of perjury" during the trial of the action — the substance being later recanted — although reprehensible, can hardly figure as an unfair trade practice, cf. *Stromberg* v. *Costello*, 456 F.Supp. 848, 850-851 (D.Mass. 1978); it may be separately punishable.

The compendium of violations of c. 93A, § 2, any way it is looked at, thus comes to very little.

(b) The judge was correct in concluding that the plaintiff had not carried the burden of showing a causal connection between violation and any loss. See *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795, 800 (1976); *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 678 (1983); *Massachusetts Farm Bureau Fedn., Inc.* v. *Blue Cross, Inc.*, 403 Mass. 722, 730 (1989). An expert witness for the plaintiff asserted that the plaintiff's loss should be measured by the total average profit for the Ford and Lincoln-Mercury vehicles sold by the defendants on Martha's Vineyard from 1977 to 1984, but apart from technical difficulties, such as that some cars registered on the island had been bought off-island, the expert founders because the sales themselves were not violations. The few odometer cases were frauds on the customers, as the judge indeed said, but could not be shown to cause loss to the plaintiff.

The plaintiff relies on *Ricky Smith Pontiac, Inc.* v. *Subaru, Inc.*, 14 Mass. App. Ct. 396, 424 (1982), to claim recovery of profits on the 302 sales, but the reliance is mis-

---

[10]The defendants argue that they should not remain bound by the admissions, but the point need not be pursued.

placed. In the *Ricky Smith* decision, a car dealer recovered against a regional distributor for unlawfully franchising a competing dealership in violation of c. 93B, § 4(3)(*l*). The defendant had to present — and did — proof of actual damage flowing from the unlawful act, but he was not bound to show it with mathematical precision (any more than he would have to do so in proving an ordinary tort). The same holds for claims under c. 93A, § 11. *Ricky Smith* does not help the plaintiff in the present case because there was no showing of actual damage here. In *Ricky Smith*, the court noted that "[c]ommon sense suggests that the placement of a competing automobile dealership within the market area of an existing dealer should normally have some direct negative economic impact on the existing dealer in terms of lost sales and diminished profits." *Id.* at 424. Contrast the situation here, where a minimal number of cars were sold with tampered odometers in the plaintiff's area over a period of seven years.

4. *Defendants' appeal.* The same distinction — actual but not clearly measurable damage or loss, contrasted with no actual damage or loss — is important in considering the judge's award of attorneys' fees to the plaintiff. When the judge made his decision herein, on October 27, 1988, he might have supposed, and evidently did, that a person at whom a violation of c. 93A, § 2, was somehow directed, but who suffered no loss in consequence of the violation, could bring suit under c. 93A, § 11, secure no substantive relief, but nevertheless recover attorneys' fees. This proposition might have been thought to derive some support from *Shapiro v. Public Servs. Mut. Ins. Co.*, 19 Mass. App. Ct. 648, 657-658 (1985), although it would overlook *Levy v. Bendetson*, 6 Mass. App. Ct. 558, 566-567 (1978). Compare *Raymer v. Bay State Nat. Bank*, 384 Mass. 310, 320 (1981); *Trempe v. Aetna Cas. & Sur. Co.*, 20 Mass. App. Ct. 448, 457-458 (1985) (*Trempe* dealt with § 9). The matter has now been clarified in *Jet Line Servs., Inc. v. American Employers Ins. Co.*, 404 Mass. 706, 718 (1989). The court there reconciled previous decisions and held that

"[u]nder § 11, a plaintiff must be entitled to relief in some other respect in order to be entitled to an award of attorneys' fees." A plaintiff gets no bounty in the form of attorney's fees "for merely identifying an unfair or deceptive act or practice. Under § 11, that unfair or deceptive conduct must have had some adverse effect upon the plaintiff, even if it is not quantifiable in dollars." In the case before us, the trial judge found no harm had come to the plaintiff caused by the "defendants' activities" and gave the plaintiff no substantive recovery. It follows that attorneys' fees should have been withheld.[11]

The judgment, so far as it awards attorneys' fees, is reversed; otherwise affirmed.

*So ordered.*

---

[11]The relevant language of c. 93A, § 11 (1988 ed.), about fees states that if the court finds a violation of § 2, the plaintiff "shall, in addition to other relief provided for by this section. . . be awarded reasonable attorneys' fees . . ." Thus a plaintiff securing only injunctive relief, not damages, might have a claim to fees. Cf. *Federal Trade Commn.* v. *Brown Shoe Co.*, 384 U.S. 316, 320-322 (1966). Here the plaintiff secured no such relief.