Fecteau, J.
This is an action brought by the plaintiff in which it is alleged that the defendants were negligent and in violation of G.L.c. 93A in connection with the placement of workers’ compensation insurance coverage, as it pertained to injuiy to a non-Massachusetts based employee.[1] The negligence action against the defendants was tried from February 24, 2004, through March 1, 2004, before the undersigned, sitting with jury;[2] the c. 93A and declaratory judgment counts were retained by the court, sitting without jury and reserved for fact-finding and ruling, following the verdict of the jury. Also with respect to the non-jury part of the trial, the parties were provided with an opportunity to expand the evidentiary record for matters deemed irrelevant to the jury portion of the trial, for which neither party offered additional evidence. The parties were granted leave until on or about March 26, 2004, by which to submit proposed findings of fact and rulings of law at which time the matter was taken under advisement.
FINDINGS OF FACT
1. The plaintiff, R.E. Leveillee Woodworking, Inc. (“Woodworking”), is principally located and continues to do business in Spencer, Massachusetts. It was incorporated approximately in 1983-1984, by Richard E. Leveillee (“Leveillee”), who had opened his first cabinetmaking shop in 1971 following a short period of time during which he was employed by another cabinetmaker.
2. By the early 1990s, the principle business of Woodworking was the manufacture and/or fabrication of commercial display cabinet work. By this time period, some of the cabinets were delivered and installed by employees of the plaintiff while others were simply delivered by its employees to work sites where installation would be performed by others not in privily to the plaintiff.
3. At a point in time beginning approximately in 1991, the defendant Gary Costello, a licensed insurance agent employed by Rome Insurance Agency, Inc. (“Rome"), met and began to solicit Richard Leveillee for the insurance business of the plaintiff. Prior to this time and until 1992, when it first began a customer-agent relationship with the defendant Rome, Woodworking obtained its insurance through the Midstate Insurance Agency, Inc. (“Midstate”). Through 1992, Midstate obtained workers’ compensation insurance for the plaintiff through the Massachusetts Workers’ Compensation Insurance Plan assigned-risk pool (the “Pool”).
4. The Pool assigns Massachusetts businesses who cannot get an insurer to issue a voluntary workers’ compensation policy to insurers who are then required to issue a workers’ compensation policy. All policies of insurance issued through the Pool contained the identical terms and conditions for coverage, regardless as to which insurer actually issues the policy.
5. From at least 1990 through 1994, the Pool assigned the plaintiffs workers’ compensation insurance to Aetna Insurance Company (“Aetna”). Each year, Aetna audited the workers’ compensation policy that it issued to the plaintiff to determine the classifications for its employees and depending to a significant degree upon the job descriptions of its employees provided by Leveillee and others in the management *447 of the plaintiff business. The classification into which employees fell determined the premium charged to Woodworking. Each of the Aetna workers’ compensation policies issued to the plaintiff identified only two classes of employees: “clerical” and “shop only & drivers.” Neither classification included “installation” work within the description of work expected to be performed, which was the subject of another available and discrete classification. The premium for workers’ compensation insurance was calculated, in part, upon the number of employees and their classifications, with some classifications with higher payment per $100.00 in payroll than others. The “shop only & drivers” classification required a premium of $9.24 per $100.00 in payroll, while the classification for installation would require $15.65 per $100.00.
6.In their initial meetings, Richard E. Leveillee described the plaintiffs business to Gary Costello as the manufacturing and delivery of display cases used by retail businesses. At some point early in their relationship, Leveillee showed Gary Costello, at his request, at least the information pages for the company workers’ compensation policies and other policies in order to understand the type of coverage that the plaintiff had. The evidence is not clear whether Leveillee maintained files of complete policies, or merely the information or declarations pages and whether Costello had actually examined complete or partial policies. When asked by Mr. Costello whether the plaintiff did installation work, Leveillee stated that it did, incidentally, on occasion, such as if a piece of trim or other minor part of a cabinet were missing when it was delivered, the driver might be asked to complete the assembly of the missing piece before the cabinets were installed. Leveillee further stated that, in most cases, the company did not install the cabinets that they manufactured. Indeed, one customer represented 75% of their gross sales and with no installation services provided. He also told Costello that either the customer arranged for the installation of the cabinets or the plaintiff hired independent subcontractors to do the work. Leveillee told Costello that independent subcontractors were retained so that Woodworking would not have to worry about union regulations, bonding, and insurance for the workers doing the installations and, when such contractors were hired, the plaintiff always obtained certificates of insurance to make sure their subcontractors were fully insured and which would result in receipt of notices if insurance was cancelled. This was done also in order for them to make sure that the company was not required to pay for insurance on subcontractors after their insurance policies were annually audited. Costello and his employer Rome Insurance relied on the information provided by Richard E. Leveillee regarding the plaintiffs business operations in handling the workers’ compensation insurance for Woodworking. There was no discussion about Woodworking needing to occasionally hire employees from other states.
7. Leveillee told Costello that he was satisfied with the services that Midstate Insurance Agency had provided, and that he did not want any changes to the plaintiffs insurance coverages, but if a cost savings could be realized, he would consider moving the plaintiffs insurance needs to his agency. Thereafter, Costello submitted a proposal which Leveillee accepted, allowing Costello and the Rome Insurance to replace Midstate as the plaintiffs agent-of-record for workers’ compensation insurance in 1992, for the renewal of its policy for the period from January 19, 1993, to January 1, 1994. As with the prior years, this renewal was placed with Aetna by the Pool. Following January 1, 1993, Rome Insurance attempted to locate an insurance company willing to write a voluntary workers’ compensation policy for Leveillee Woodworking (as opposed to a policy assigned through the Pool). However, given the type of business in which the plaintiff was engaged and its loss history, all of the insurers contacted by Rome Insurance indicated that they would not issue a voluntary workers’ compensation insurance policy to Woodworking.
8. Each year, upon receipt of the plaintiffs workers’ compensation policy, Leveillee studied only the information page, largely to determine the amount of the premium to be paid. He also was aware, before 1995, of “out-of-state” coverage, as he knew that some states were excluded from coverage: he knew to check the out-of-state coverage prior to performing any out-of-state work, to ascertain whether coverage was excluded for that particular state. Prior to 1995, New York was not excluded from coverage. His testimony that he did not understand the policy language is not credited. I infer that he chose instead to remain largely uninformed about his insurance coverage. He made no apparent effort to read the policies nor make any inquiry about the extent of his insurance coverage. He did rely upon Costello to provide adequate insurance policy coverage based upon his understanding of the plaintiffs business, an understanding that was dependent upon Leveillee providing an accurate description of the nature of their work.
9. In addition to job classifications, another factor that contributes, then as now, to overall premium cost is the experience of the business in connection with work-related accidents. In January 1993, Gary Costello informed Leveillee that the company should expect an increase in premium for the company’s workers’ compensation insurance the following year due to an expected increase in the plaintiffs experience factor which was a result of more frequent injury claims being reported by the company. Costello also advised Leveillee that the plaintiff would likely be subject to an additional charge, an “all risk adjustment program” (“ARAP”) surcharge, on its workers’ compensation insurance the next year due to severe injuries suffered by employees of Woodworking. For the policy year 1994, as Gary Costello had advised the *448 prior January, as a result of a higher experience modification factor and the imposition of the highest allowable ARAP surcharge, the plaintiffs premium increased.
10. After Aetna issued the renewal workers’ compensation insurance policy to Woodworking effective January 1, 1994, Rome Insurance continued to try to locate an insurance company willing to issue a voluntary workers’ compensation insurance policy to the plaintiff. However, as a result of the increased experience modification factor and ARAP surcharge, Rome Insurance was unable to locate a company willing to issue a voluntary workers’ compensation insurance policy to the plaintiff.
11. In the policies though policy year 1994, the workers’ compensation policies provided certain “out-of-state” coverage that insured employees who were hired in other states to perform work in those states, and the information pages identified both the states where coverage was afforded and the classification for the plaintiffs employees. These workers’ compensation insurance policies that had been issued to the plaintiff by Aetna required it to notify Aetna in the event that Woodworking conducted business operations outside the Commonwealth of Massachusetts. At no time relevant to these proceedings did anyone from Woodworking give notice to Aetna that it was conducting business outside of the Commonwealth of Massachusetts, although Costello was aware that the plaintiff made deliveries out of state and that its drivers had need of bonding for travel into certain states. Leveillee did not ask Costello whether employees hired outside of Massachusetts would be covered by the plaintiffs workers’ compensation policy and never informed him that Woodworking ever hired employees from other states.
12. In September 1994, the Commonwealth of Massachusetts Division of Insurance approved a change in the standard form workers’ compensation insurance policy issued through the Assigned Risk Pool, called the “Limited Other States Endorsement.” This endorsement limited coverage under the policy for workers’ compensation insurance claims for injuries that occurred out of state only to Massachusetts employees. It did not change coverage for any other claims.
13. The Massachusetts Division of Insurance directed that all workers’ compensation policies issued through the Pool contain the Limited Other States Endorsement. The Division of Insurance also instructed the insurance companies issuing policies though the Pool to inform their insureds of the addition of the limited other states endorsement to assigned risk workers’ compensation insurance policies.
14. In November of 1994, Aetna notified the plaintiff in writing that at the direction of the Massachusetts Workers’ Compensation Rating and Inspection Bureau, Aetna would not be renewing the Leveillee Woodworking workers’ compensation insurance policy effective January 1, 1995. In response to this notice from Aetna, and as it had done in the two prior years, Rome Insurance again attempted to locate an insurance company willing to issue a voluntary workers’ compensation insurance policy to the plaintiff. However, Rome Insurance was again unable to locate a company willing to issue a voluntary workers’ compensation insurance policy to Woodworking at that time.
15. In December of 1994, Rome Insurance sent a Massachusetts Workers’ Compensation Insurance Bureau application form (the “Application”) to Woodworking to apply for a new policy of workers’ compensation insurance through the Pool. The directions called for Woodworking to review the Application for accuracy, to complete certain portions, and to return the signed Application to Rome. Later that month, Rome received the completed Application from Woodworking, which stated it was signed by Richard E. Leveillee, President of Woodworking, on December 19, 1994. Richard E. Leveillee signed the Application beneath the statement certifying that he understood all of the statements in the Application and that all of the statements in the Application were true. The signed Application described the business as “manufacture and/or assembly of wood products (cabinets), in shop (only) and clerical.” Nowhere in the Application signed by Richard E. Leveillee does it indicate that Woodworking was performing installation work. Further, nowhere in the Application signed by Leveillee did it indicate that the company hired out-of-state employees. Rome Insurance relied on the information contained in the Application in handling the workers’ compensation insurance for Leveillee.
16. In early 1995, Aetna performed its annual audit of the plaintiffs 1994 workers’ compensation policy. Denise Leveillee-Phipps, secretary for Woodworking and Richard E. Leveillee’s sister, sent a copy of the Aetna audit to Rome Insurance on Februaiy 13, 1995. Included in the Aetna audit was a description of the plaintiffs business which stated, in part, “there is usually no installation and all work is done on the insured’s premises.” The cover letter from Denise Leveillee-Phipps transmitting the Aetna audit of the company’s 1994 workers’ compensation policy to Rome Insurance indicated that the information on the audit was “probably correct.” Rome Insurance relied on the information contained in this Aetna audit of the plaintiffs 1994 workers’ compensation policy in handling the workers’ compensation insurance for the plaintiff.
17. Following submission of the signed Application, the Massachusetts Workers’ Compensation Rating and Inspection Bureau assigned a new carrier, Travelers Insurance Company (“Travelers”), to write the plaintiffs workers’ compensation insurance policy. Leveillee Woodworking was provided a copy of its 1995 workers’ compensation insurance policy issued by the *449 Travelers Insurance Company through the Pool. As he had done in prior years, Richard E. Leveillee reviewed the information page for the workers’ compensation insurance policy issued by Travelers. With respect to “other states” coverage, contrary to the prior policies that had indicated on the information pages of those policies that the plaintiff was covered in all states except certain enumerated states, the information page on the 1995 Travelers workers’ compensation policy issued to Leveillee Woodworking did not indicate that it provided coverage in any particular states, and instead directed the insured to review the Massachusetts Limited Other States endorsement contained in the policy. As before, Leveillee continued to show a profound lack of interest in the details of the insurance coverage being afforded to his business and specifically did not read the Massachusetts Limited Other States endorsement, to which the policy had directed him. Gary Costello also did not specifically discuss this policy change with him, as he did not believe it to be relevant to Woodworking, based upon his understanding that the company did not hire out-of-state employees and that, therefore, this change was inconsequential to it. Somewhat surprisingly, Costello also showed a lack of knowledge concerning the coverages available in the workers’ compensation policies issued through the pool to Woodworking, and others, in prior years, as he was unaware of the fact that “other states coverage” had been present in policies prior to 1995.
18. The Massachusetts Limited Other States endorsement contained in the plaintiffs 1995 workers’ compensation insurance policy clearly indicated that if the insured hires workers in another state, it needs to obtain workers’ compensation insurance in that state. After being issued the 1995 Travelers workers’ compensation policy, no one from Woodworking contacted Rome Insurance to inquire about insurance for its workers out-of-state or to ask what limitations existed concerning them.
19. Even after Travelers had been assigned the plaintiffs workers’ compensation insurance policy through the Pool, Rome Insurance continued to attempt to locate an insurance company willing to write a voluntary workers’ compensation policy for Woodworking, finding success in April of 1995, with Arbella Insurance Company (“Arbella”) agreeing to consider writing a voluntary workers’ compensation policy for the plaintiff. On April 6, 1995, Arbella, through its agent Abacus Management, Inc., conducted an underwriting loss control survey at Leveillee Woodworking. The interviewer met with Richard E. Leveillee and Denise Leveillee-Phipps, and completed a survey form, in which Richard E. Leveillee and Denise LeveilleePhipps described the plaintiffs business as “manufacturer and delivery of cabinetry/mill work for retail.” They further indicated that there were two drivers who did interstate travel and that the remainder of the staff was “in-house.” Based on the underwriting survey, Arbella issued a workers’ compensation policy to the plaintiff effective April 25, 1995.
20. The premium for the Arbella workers’ compensation policy issued to Woodworking was significantly less than the premium for the Travelers workers’ compensation policy issued to the plaintiff through the Pool. The Arbella workers’ compensation policy, like the Travelers policy which it replaced: (1) contained the Massachusetts Limited Other States endorsement, (2) the information page on the 1995 Arbella workers’ compensation policy issued to the plaintiff did not indicate that it provided coverage in any particular states, (3) directed Richard E. Leveillee to review the Massachusetts Limited Other States endorsement contained in the policy, (4) the “other states” endorsement clearly indicated that if the insured hires workers in another state, it needs to obtain workers’ compensation insurance in that state, and (5) identified just two classes of company employees, “carpentiy-shop only & drivers” and “clerical/office.” Just as had occurred prior to the issuance of the Travelers policy, no one from Woodworking contacted Rome Insurance after being issued the 1995 Arbella workers’ compensation policy to ask what limitations were placed on insurance for its workers out-of-state, or why the premium was so much less than for prior policies.
21. Sometime in August 1995, Woodworking was awarded a job manufacturing and installing cabinetry in a Crabtree & Evelyn store in the Eastview Mall in Victor, New York. The installation was scheduled to occur in early September 1995. Several days before the plaintiff was scheduled to perform the installation work, the general contractor for the job contacted the plaintiff to advise of a requirement to use union laborers to install the cabinets at the Eastview Mall. In response to this information, on behalf of the plaintiff, Richard J. Leveillee contacted the relevant union business agent in Rochester, New York, to discuss hiring union workers for the Eastview Mall job. The union representative informed Leveillee that if the plaintiff was going to have an employee do installation work in New York, that employee would have to join the local union and Woodworking would still be required to hire two local union workers to work on the project. Leveillee agreed with those terms and sent a check, by overnight mail, to the local union hall in Rochester, New York to cover the benefits and wages for the two union workers as well as for the union dues for the Leveillee employee who would be doing installation work at the Eastview Mall.
22. In agreeing to these terms, Leveillee’s understanding was that he was only making a payment to the New York Union and that the two union workers would not be considered employees of Leveillee Woodworking. Leveillee did not discuss with the business agent whether the two union workers were covered by *450 workers’ compensation insurance, nor did the two union workers complete any job applications, tax forms or other employment paperwork as employees of the plaintiff before starting work at the Eastview Mall. Richard J. Leveillee did not discuss with his father, Richard E. Leveillee, whether the two union workers were covered by the company’s workers’ compensation insurance, nor did anyone from Woodworking contact Rome Insurance, Arbella or any professional adviser to obtain information or advice concerning whether the union workers would be covered by the company’s workers’ compensation insurance.
23. On September 6,1995, one of the union workers hired by Richard J. Leveillee, John Hartley, claimed to have been injured at the Eastview Mall job site lifting a tool box into the back of a truck. Prior to Mr. Hartley’s injury, no one from Leveillee Woodworking ever asked anyone at Rome Insurance whether the Leveillee workers’ compensation insurance policy covered injuries to out-of-state workers, or ever informed Rome that it was being required to hire out-of-state workers. Prior to hiring the two union workers for the Eastview Mall Project, Leveillee had never hired an employee outside the Commonwealth of Massachusetts. Prior to hiring the two union workers for the Eastview Mall job, when Woodworking hired workers out-of-state, it did so through temporary employment agencies. The plaintiffs experience was that it would pay the temp agency and then the temp agency would pay the worker directly. The worker would never be placed on the plaintiffs payroll, nor would they be covered under the company’s workers’ compensation policy.
24. Other than from Arbella, Rome was unable to obtain coverage for Woodworking in 1995, from any carrier willing to write workers’ compensation insurance in the Massachusetts voluntary market. The Arbella workers’ compensation program, which started in 1994, differed significantly from the workers’ compensation programs at other insurance companies. Underwriting for the Arbella workers’ compensation program relied less on a company’s past experience and more on a company’s willingness to follow a loss control program developed by Abacus Management, Inc. It was only because of this unique approach that Arbella was willing to issue a voluntary workers’ compensation policy to Leveillee in 1995.
25. Rome Insurance was compensated for the work it did obtaining insurance for Leveillee Woodworking through commissions paid by the insurers based upon the amount of premium paid by the insured. The higher the premium paid by the insured, such as Leveillee Woodworking, the higher the commission earned and paid to Rome Insurance. Had Rome Insurance obtained workers’ compensation insurance for Woodworking identifying a percentage of the plaintiff s personnel as performing installation work, the insurance premiums, and consequently the commission paid to Rome Insurance, would have increased. Neither Rome Insurance nor Costello had any financial incentive to provide inaccurate descriptions to any insurer of the types of jobs performed by the employees of its customers, other than in landing the customer in the first place.
26.Had Rome been unable to place the Woodworking workers’ compensation coverage in the voluntary market, with Arbella, it would have been forced to remain in the assigned risk pool where “other states coverage” was no longer available, no matter the carrier. Broader “other states coverage” was still available in the voluntary market in 1995. It is unclear from the evidence whether the reason such coverage was not made a part of the policy for Woodworking was that Arbella was unwilling to write the additional coverage or that it was not requested. It is customary that when an insurer is requested and willing to substitute an optional, broader form of a particular coverage for standard coverage that is more limited, an additional premium is charged. I infer that Costello did not initiate discussion with Leveillee about the limitation imposed by the insurance commissioner on “other states coverage” and the availability of broader coverage due to his belief that it was not applicable to the plaintiffs situation. Leveillee did not inquire about the availability of broader coverage as he chose not to inform himself of changes in policy coverages by reading his policies and he relied upon Costello to inform him as necessary, and as he had done with some other insurance coverages, with respect to changes or omissions.
DISCUSSION
The plaintiff claims that the defendants’ failure to maintain its “other states coverage” and their failure to inform the plaintiff of the change in the policy which excluded coverage for injuries sustained in other states except for Massachusetts employees are violations of G.L.c. 93A, §11.
G.L.c. 93A, §11 states in relevant part:
Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation . . . may, as hereinafter provided, bring an action . . .
G.L.c. 93A, §11 seeks to discourage “unscrupulous behavior in the marketplace” and does not apply to purely “private transactions.” Manning v. Zuckerman, 388 Mass. 8, 14 (1983).
The plaintiff has the burden of proving that the defendant committed an unfair or deceptive act or practice. G.L.c. 93A, §§2 and 11. A “deceptive” act or practice is one which has the capacity to deceive. An *451 act or practice is deceptive if it could reasonably cause a person to act differently from the way he would act if he knew the truth about the matter. Purity Supreme v. Attorney Gen., 380 Mass. 762, 777 (1980), quoting Lowell Gas Co. v. Attorney Gen., 377 Mass. 37, 51 (1979). It includes any communication made with the intent to deceive another person, but intent to deceive is not always necessary. Swanson v. Bankers Life Co., 389 Mass. 345, 349 (1983) (no intent to deceive need be shown). A negligent or careless misrepresentation of fact, the truth of which is reasonably capable of ascertainment is also a deceptive act or practice. Glickman v. Brown, 21 Mass.App.Ct. 229, 235 (1985). An act or practice is “unfair” if it was immoral, unethical, oppressive, unscrupulous or otherwise unconscionable. PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975), citing Federal Trade Comm’n v. Sperry Huchinson Co 405 U.S. 233, 244 (1972), citing 20 Fed.Reg. 8325, 8395 (1964). An act that might be unfair in a business transaction with an unsophisticated consumer might not be unfair when it takes place in a transaction between two sophisticated businessmen. Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 475, quoting Spence v. Boston Edison Co., 390 Mass. 601, 616 (1983). Neither negligent acts, standing alone, nor breach of contract constitute proof of an unfair or deceptive act or practice. Swanson v. Bankers Life Co., supra at 349 (“not eveiy negligent act is unfair or deceptive...”); Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100 (1979) (breach of contract alone does not amount to unfair act or practice). The plaintiff must prove that the negligence or breach was motivated by some “pernicious purpose,” was unfair or could reasonably cause a person to act differently from the way he would act if he knew the truth about the matter. Purity Supreme, Inc. v. Attorney Gen., supra at 777, Framingham Auto Sales v. Workers’ Credit, 41 Mass.App.Ct. 416, 418 (1996). Lastly, the plaintiff must prove that the unfair or deceptive act or practice of the defendant caused damage. Martha’s Vineyard Auto Village, Inc. v. Newman, 30 Mass.App.Ct. 363, 368-69 (1991), rev. denied, 409 Mass. 1105 (1991).
I find no basis to conclude that the defendants’ failure to obtain or maintain “other states coverage” is unfair or deceptive. While the workers’ compensation insurance for Leveillee Woodworking remained in the assigned-risk pool, there was nothing that Costello nor Rome did or could do to prevent the imposition of the limited endorsement, nor did they cause the loss of its broader “other states coverage” as this coverage was rendered unavailable by action of the Commissioner of Insurance. At most, considering the kind or quality of coverage that the plaintiff was allowed to have within the assigned-risk pool, including the policy change ordered by the Commissioner of Insurance, nothing Costello or his employer Rome did caused a loss of coverage. Moreover, their actions to obtain coverage from Arbella in the voluntary market did not result in less coverage to Woodworking, as the coverage in the Arbella policy was the same as provided in its last pool-policy with Travelers, both of which contained the limited endorsement. The plaintiff did not convince the jury that the defendants were negligent in failing to maintain the “other states” coverage. The actions or omissions of the defendant complained about by the plaintiff in connection with this issue do not rise to the level intended to be proscribed by G.L.c. 93A, §11.
Turning next to the contention that the defendants were negligent in failing to inform the plaintiff specifically about the change in policy coverage limiting coverage to employees who are injured out of state to Massachusetts residents, the court adopts the findings of the jury in this regard. It is a matter of Massachusetts law that an insurance agent must exercise reasonable care in the implementation of the agency and in carrying out the instructions of the principal-client. In the event that requested coverage is or becomes unavailable, it is within the general duty of care of the agent to provide such information to his client that the agent knew or should have known to be relevant to the affairs of the interests of the client and about which the agent had reason to know or could reasonably foresee would be important for his client to know. Moreover, an agent who holds himself out as possessing a superior amount of skill and knowledge shall be bound to a higher standard. Bicknell, Inc. v. Havelin, 9 Mass.App.Ct. 497, 500-01 (1980). However, while a client is entitled to rely, to a certain extent, upon his agent, an insured cannot abandon all responsibility for providing accurate information upon which it is foreseeable that the agent will rely and for ascertaining the terms of the insurance coverage his agent obtained. Indeed, depending upon the circumstances of the transaction, including the nature of the relationship between the parties, the reasonableness of their respective conduct and the insured’s sophistication and experience, it may lead to an estoppel barring action against the agent. Campione v. Wilson, 422 Mass. 185, 196 (1996). Moreover, the client’s own conduct, his knowledge, and what he reasonably should have known, may be factors in determining whether an act or practice is unfair. Swanson v. Bankers Life Co., 389 Mass. 345, 349 (1983).
Here, there is little question that Costello represented himself as possessing a certain amount of skill and knowledge in dealing with matters of business insurance and that Leveillee was justified to rely, to a certain extent, upon his expertise. However, Costello was not a fiduciary of Leveillee Woodworking. Leveillee had a mutual responsibility to Costello to provide adequate information concerning his business so that Costello could make appropriate recommendations concerning insurance coverage. It was apparent from the evidence that Leveillee minimized the amount of installation work performed by the company. Further *452 more, notwithstanding the fact that Costello knew that Woodworking employed drivers who made deliveries out of state, he was given no information upon which to form a belief or understanding that Woodworking employed anyone who performed installation on a regular basis, in or outside of Massachusetts, other than from temporary employment agencies or companies who would provide all necessary insurances. Richard Leveillee knew that his workers’ compensation insurance premium was based upon job classification: he knew as well that tasks or jobs that were more physically hazardous and which exposed the company to more claims in number and severity were, understandably, rated higher, which would result in an increase in his premium, and the agent’s commission, as well.
The plaintiff has not proved that it would have been able to obtain “other states coverage” from any carrier. More significantly, however, and more to the point of this issue, is the claim of the plaintiff that, by not being specifically informed by Costello of the change in coverage, it was left in a vulnerable position, unable to assess its potential exposure in hiring the New York employee. However, the plaintiff had been informed on prior occasions about the previous, broader “out-of state” coverage, enough to know to examine the information page to ascertain whether work contemplated in another state would be excluded by the policy. After the policy change, he had several opportunities to inform itself of its insurance coverage and the limitation placed on out-of-state work and workers. First, he failed to avail himself of the opportunity to read the Travelers Insurance policy when it was received, together with a notice from the insurer that the endorsement which limited this coverage had been ordered by the insurance commissioner, together with direction from the information page for the recipient to read the endorsement, contrary to the information pages of the prior policies on which were listed the states in which coverage was excluded. The plaintiff next received the policy from Arbella with the same reference to the endorsement itself. Finally, the plaintiff was confronted with the novel event for him of the New York requirement to hire workers from the union hall. On none of these occasions did Leveillee examine his policy or call Costello to ask specifically about this issue or to inquire about whether such an employee would be covered. Nor did he attempt to ascertain from the union hall whether they were covered under some other insurance, nor did he request evidence of insurance, contrary to his prior practice of obtaining certificates of insurance from independent subcontractors. Individually and collectively, these were critical oversights by the plaintiff who, consequently, must carry the responsibility for it, as it had failed to take reasonable steps to protect itself and failed to provide the defendants with sufficient information upon which they might have been able to identify the weakness in the plaintiffs insurance protection and advise it accordingly.
The jury found the plaintiff to have been 85% negligent in connection with the failure to have insurance coverage for the out-of-state worker in question (John Hartley). This is not the kind of case for which liability under G.L.c. 93A, §11, was intended. Without intending to minimize the impact of an uninsured loss upon the plaintiff, which is admittedly significant, the defendants’ failure to inform the plaintiff of the insurance coverage change remains a case of ordinary negligence which was allowed to occur and exceeded by the negligence of the plaintiff. While it may be viewed by a reasonable business person as a failure to fulfill a business obligation, no such reasonable business person would consider the circumstances of this failing to be reprehensible. The defendants expressed no false or deceptive statements nor was there a lack of candor in any form. The defendants did not take advantage of the plaintiff nor were they coercive in any way. The plaintiff has failed to satisfy its burden of proof to show that Costello and Rome were unfair or deceptive. Likewise, the plaintiff has failed to provide adequate support in the evidence for the declaration it seeks. Consequently, a judgment in favor of the defendant is required.
ORDER FOR JUDGMENT
Therefore, for the foregoing reasons, a judgment shall enter in favor of the defendants on counts V and VI, which present allegations of violation of G.L.c. 93A, and on counts VII and VIII, which seek a declaration of the defendants’ future liability to the plaintiff in connection with damages asserted on behalf of John Hartley, the injured “out-of-state” employee. A declaration shall enter which declares that the defendants are not liable for future damages which may be incurred by the plaintiff as a result of the workers’ compensation claim of John Hartley.

tyhe plaintiffs complaint is in 8 counts, with counts V and VI devoted to alleged violation of G.L.c. 93A, §11, the former as against Gary Costello and the latter against his employer, Rome Insurance Agency, under vicarious liability principles. Also necessary to be addressed herein is the plaintiffs related claim for a declaratory judgment, represented by counts VII and VIII, by which it seeks to have the defendant declared liable for all future damage that Leveillee Woodworking may incur as a result of the Hartley workers’ compensation claim in New York.

The jury answered special verdict questions that the defendants were not negligent in failing to procure “other states workers’ compensation coverage” but were negligent in failing to inform the plaintiff that its workers’ compensation insurance policy did not contain “other states coverage” for the relevant time and this negligence was a substantial factor in the plaintiff failing to have insurance coverage for the loss in question. However, the jury also found the plaintiff to have been substantially the cause of this failing, being found to have been 85% negligent, in contrast to 15% negligence on the part of the defendants. I agree with and adopt as findings of fact, or mixed findings of fact and law, the jury’s answers to the special verdict questions.